# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ENVIRONMENTAL DEFENSE FUND
257 Park Avenue South
New York, NY 10010;

CENTER FOR ENVIRONMENTAL HEALTH
2201 Broadway #508
Oakland, CA 94612;

ENVIRONMENTAL HEALTH STRATEGY
CENTER
565 Congress St., Ste. 204
Portland, ME 04101;

NATURAL RESOURCES DEFENSE
COUNCIL
40 West 20th Street, 11th Floor
New York, NY 10011;

and

SIERRA CLUB
2101 Webster St., Ste. 1300
Oakland, CA 94612,

     *Plaintiffs*,

     v.

ANDREW WHEELER, Administrator, U.S.
Environmental Protection Agency, in his
official capacity,
1200 Pennsylvania Ave., NW
Washington, DC 20460;

and

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
1200 Pennsylvania Ave., NW
Washington, DC 20460,

     *Defendants*.

Civil Action No. 1:20-cv-762

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## INTRODUCTION

1.      In the Toxic Substances Control Act ("TSCA"), Congress required the United States Environmental Protection Agency ("EPA") to approve any new chemical before it can first be manufactured. EPA can only approve an application to manufacture a new chemical after reviewing the potential risks the chemical may pose, and, if necessary, EPA must regulate the chemical to protect human health and the environment. Congress also mandated that EPA operate this premanufacture review process transparently, including requiring that EPA timely disclose to the public all non-confidential information in the application so that interested persons can provide input into EPA's decision-making. Instead, EPA operates the process as a black box, thwarting the ability of the public to be informed and to provide input.

2.      Congress required EPA to review new chemicals prior to manufacture to prevent significant exposures before their potential dangers are understood and, thus, ensure that they do not, years or decades later, threaten lives or contaminate the environment. Congress recognized that prior to TSCA's enactment: "Most Americans had no idea…when they went to work in the morning, or when they ate their breakfast—that when they did the things they had to do to earn a living and keep themselves alive and well—that when they did things as ordinary, as innocent and as essential to life as eat, drink, breathe or touch, they could, in fact, be laying their lives on the line. They had no idea that, without their knowledge or consent, they were often engaging in a grim game of chemical roulette whose result they would not know until many years later." S. Rep. No. 94-698, at 3 (1976).

3.      Congress understood that "[t]he most effective and efficient time to prevent unreasonable risks to public health or the environment is prior to first manufacture. It is at this

point that the costs of regulation in terms of human suffering, jobs lost, wasted capital

expenditures, and other costs are lowest." S. Rep. No. 94-698, at 5.

4.       Thus, under TSCA, a chemical manufacturer must apply for EPA approval before

it can begin manufacturing (defined to include importing) a new chemical that has not already

been manufactured in the United States. *See* 15 U.S.C. § 2604. EPA must review the

application—which includes the potential activities the chemical will be involved in and studies

relating to its health and environmental effects and exposures—to determine the potential risk

posed by the new chemical. And based on that review EPA must regulate the chemical, up to and

including blocking market access, as necessary to protect human health and the environment. *Id.*

§ 2604(e), (f). "[T]his provision would no longer allow the public or the environment to be used

as a testing ground for the safety of these products." S. Rep. No. 94-698, at 3.

5.       Central to this lawsuit, TSCA requires that EPA conduct its review of new

chemicals transparently, so that the public: (1) has ready access to information about the new

chemical, including potential uses, effects, and exposures; and (2) has an opportunity to

participate in EPA's decision-making process. Specifically, TSCA mandates that EPA: quickly

inform the public upon receipt of an application to manufacture a new chemical; and disclose all

non-confidential information contained in the application, particularly information about the

health effects of and exposures to the new chemical, to interested persons. 15 U.S.C. §§

2604(d)(1), (2), 2613.

6.       As EPA itself recognizes, "[t]hese provisions indicate that Congress intended

informed citizen involvement in review of new chemical substances, although EPA is to be the

primary decision-maker. Public participation cannot be effective unless meaningful information

is made available to interested persons." EPA, Premanufacture Notification; Premanufacture

Notice Requirements and Review Procedures, 48 Fed. Reg. 21,722, 21,737 (May 13, 1983).

7.     Because chemical manufacturers continue to apply for and receive approval to

manufacture new variants of chemicals that are known or suspected to be dangerous—chemicals

like perfluoroalkyl and polyfluoroalkyl substances ("PFAS") and isocyanates, among others—

Plaintiffs have tried to make use of TSCA's transparency and disclosure provisions. Plaintiffs

seek to provide input during EPA's review of potentially dangerous new chemicals to ensure that

EPA adequately protects public health and the environment from new chemicals and informs the

public of potential dangers of chemicals that EPA approves.

8.     However, EPA currently operates the new chemical program as a black box,

denying the public information to which they are legally entitled. The public needs this

information to provide input on the potential effects of, and exposures to, new chemicals and to

advocate for restrictions on the chemicals' manufacture, use, and disposal necessary to protect

public health and the environment. TSCA requires that notice of EPA's receipt of new chemical

applications be published in the Federal Register within 5 business days; EPA routinely fails to

disclose that it has received an application within the mandated time frames. TSCA mandates

that EPA disclose to the public any health and safety studies and all other non-confidential

information submitted in support of a new chemical application; EPA routinely withholds such

information from the public. TSCA requires chemical manufacturers to meet certain

requirements before EPA can invoke TSCA's confidentiality provisions to prevent public

disclosure of information in the application; yet, even when the manufacturer fails to meet these

requirements, EPA routinely withholds such information from the public. EPA's regulations

require that EPA publish the applications in an online docket; yet, EPA fails to do so.

4

9.      Plaintiffs bring this lawsuit to ensure that EPA complies with TSCA's disclosure provisions and request that this Court: declare EPA to be in violation of TSCA's disclosure mandates; order EPA to publish full and complete notices of its receipt of new chemical applications in a timely fashion; and order EPA to disclose all non-confidential information, including health and safety studies, supporting such applications. Plaintiffs also request that the Court require EPA to disclose previously requested information on new chemicals that EPA refused to disclose. Plaintiffs further request that the Court declare that EPA engages in a pattern and practice of violating TSCA's numerous disclosure mandates and enjoin EPA's black-box approach to reviewing new chemicals on a prospective basis. Action by this Court is needed to ensure Plaintiffs and their members have timely access to information and are able to provide input on the potential risks of new chemicals and the need for protections from those risks prior to completion of EPA's reviews.

## JURISDICTION AND VENUE

10.      This action arises under the Toxic Substances Control Act, 15 U.S.C. § 2619. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 2619, 28 U.S.C. § 1331, and 28 U.S.C. § 1361. This Court may order the Administrator to perform the requisite acts and duties, may issue a declaratory judgment, and may grant further relief pursuant to the Toxic Substances Control Act, 15 U.S.C. § 2619, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1361. Plaintiffs have a right to bring this action pursuant to the Toxic Substances Control Act, 15 U.S.C. § 2619, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

11.      By certified letters to the Administrator and the Attorney General—posted on September 3, 2019, and with return receipts dated, respectively, September 6 and September 9,

2019—Plaintiffs gave notice of this action as required by 15 U.S.C. § 2619(b)(1)(A) and 40

C.F.R. §§ 702.60-702.62.

12.     Venue is vested in this Court under 28 U.S.C. § 1391(e)—because Defendants

reside in this district and a substantial part of the events or omissions giving rise to the claim

occurred in this district—and 15 U.S.C. § 2619(a)—because the alleged violations occurred in

this district and Plaintiffs seek to compel the Administrator to perform acts or duties under

TSCA which are not discretionary.

## PARTIES

13.     Environmental Defense Fund ("EDF") is a membership organization incorporated

under the laws of the State of New York. EDF relies on science, economics, and law to protect

and restore the quality of our air, water, and other natural resources, and to support policies that

mitigate the impacts of climate change. Through its programs aimed at protecting human health,

EDF has long pursued initiatives at the state and national levels designed to reduce exposure of

its members and the general public to toxic chemicals. Among other goals, EDF seeks to

significantly reduce exposure to high-risk chemicals in consumer products, water, and food, in

part, by significantly expanding actionable information on chemical risks. EDF uses information

about chemical substances in its research and advocacy efforts. EDF has hundreds of thousands

of members in the United States, and EDF has members in all 50 states and the District of

Columbia. EDF is recognized as a not-for-profit corporation under section 501(c)(3) of the

United States Internal Revenue Code. EDF brings this action on behalf of itself and its members.

14.     Center for Environmental Health ("CEH") is a nonprofit organization

incorporated under the laws of the state of California. CEH protects people from toxic chemicals

by working with communities, consumers, workers, government, and the private sector to demand and support business practices that are safe for public health and the environment.

15.     Environmental Health and Safety Center ("EHSC") is a Maine Nonprofit Corporation, headquartered in Portland, Maine with an additional office in Bangor, Maine. EHSC works to secure a healthier environment for the residents of Maine. EHSC works to create a world where all people are healthy and thriving, with equal access to safe food and drinking water, and products that are toxic-free and climate-friendly. EHSC works at both the state and federal level for policies to achieve these goals.

16.     Natural Resources Defense Council ("NRDC") is a national, not-for-profit environmental and public health membership organization with hundreds of thousands of members nationwide. For decades, NRDC's scientists, policy experts, and attorneys have engaged in research, analysis, communications, legislative work, and litigation to protect public health and the environment from harms associated with toxic chemical exposure. NRDC regularly submits comments on proposed EPA regulatory decisions, and its mission includes ensuring that these regulatory decisions are informed by public participation and the best available scientific research.

17.     Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California. A national organization with 67 chapters and hundreds of thousands of members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these

objectives. The Sierra Club is dedicated to the protection of public health and the environment. Sierra Club brings this action on behalf of itself and its members.

18.     Defendants are Andrew Wheeler, the Administrator of the United States Environmental Protection Agency ("Administrator"), and the United States Environmental Protection Agency. As Administrator, he is charged with the duty to uphold the Toxic Substances Control Act and to take required regulatory actions therein.

## LEGAL FRAMEWORK

### I.     EPA Is Required to Review and Approve New Chemicals Before Manufacture

19.     Congress enacted TSCA in 1976 to comprehensively regulate chemicals in commerce from their initial manufacture to ultimate disposal in order to "prevent unreasonable risks of injury to health or the environment." S. Rep. No. 94-698, at 1; Pub. L. No. 94-469, 90 Stat. 2003 (codified at 15 U.S.C. § 2601 et seq.) (1976). Then-existing environmental laws were "clearly inadequate" to address the "serious risks of harm" to public health from toxic chemicals. H.R. Rep. No. 94-1341, at 7 (1976); see S. Rep. No. 94-698, at 3 ("[W]e have become literally surrounded by a man-made chemical environment. … [T]oo frequently, we have discovered that certain of these chemicals present lethal health and environmental dangers.").

20.     Under TSCA's new chemicals provisions, 15 U.S.C. § 2604, EPA typically must review and approve a new chemical before it may be manufactured, unless a chemical is exempt from review. The manufacturer must generally submit a premanufacture notice ("PMN"), or the manufacturer may submit an application for an exemption including, as relevant here, an application under the test marketing exemption. *See generally id.*

21.     The requirements of § 2604 were designed to "assure that chemicals receive careful premarket scrutiny before they are manufactured or distributed to the public." S. Rep. No. 94-698, at 3.

22.     Prior to the 2016 amendments to TSCA, EPA was only required to regulate a new chemical, in order to protect health or the environment, if EPA reviewed the PMN and found that there was a reasonable basis to believe that the chemical "presents or will present" an unreasonable risk of injury to health or the environment. Pub. Law. 94-469 § 5(f)(1); *see* 15 U.S.C. § 2604(f)(1) (2015). EPA was given 90 days to make this determination, but if EPA was unable to make an affirmative finding that a new chemical was unreasonably risky it was not obligated to restrict the chemical. Instead, if EPA both lacked sufficient information about a chemical *and* on that basis found a new chemical could present unreasonable risk, it had authority—but no mandate—to regulate the chemical. *Id.* § 2604(e)(1) (2015). However, a lack of information alone gave EPA no authority to regulate a new chemical.

23.     In the 2016 amendments to TSCA, Congress significantly strengthened the § 2604 premanufacture review process by requiring that EPA review and make an affirmative decision about every PMN submitted. Now EPA may only approve the manufacture of a new chemical, without imposing restrictions to protect health or the environment, if it finds that the chemical is "not likely to present an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation." 15 U.S.C. § 2604(a)(3)(C), (g). In making this risk determination, EPA must consider all "conditions of use" of the new chemical—i.e., all known, intended, and reasonably foreseen circumstances involving the chemical's manufacture, processing, distribution, use, or disposal. *Id.*; *id.* § 2602(4).

24.     As a result of the 2016 amendments, if there is insufficient information "to permit a reasoned evaluation of the health and environmental effects of the relevant chemical substance," or if EPA finds that the chemical may (or does) present an unreasonable risk, 15

U.S.C. § 2604(a)(3)(A), (B), EPA must impose restrictions on the manufacturer "to the extent necessary to protect against an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation." 15 U.S.C. § 2604(e), (f). EPA must also regulate the chemical if it finds that the chemical "is or will be produced in substantial quantities, and such substance either enters or may reasonably be anticipated to enter the environment in substantial quantities or there is or may be significant or substantial human exposure to the substance." *Id.* § 2604(a)(3)(B)(ii)(II).

25.    To enable EPA to complete this analysis, the applicant must include in the PMN application "any information in [its] possession or control…related to the effect of any manufacture, processing, distribution in commerce, use, or disposal of such substance or any article containing such substance, or of any combination of such activities, on health or the environment" and "a description of any other information concerning the environmental and health effects of such substance, insofar as known to the [applicant] or insofar as reasonably ascertainable." 15 U.S.C. § 2604(d)(1)(B), (C); *also* 40 C.F.R. § 720.50 (requiring the PMN to contain "all test data in the submitter's possession or control").

26.    EPA is generally supposed to complete this determination within 90 days, which it may extend by an additional 90 days for good cause. 15 U.S.C. § 2604(c).

27.    As an alternative to the PMN application process, a person may apply to manufacture a chemical under the test marketing exemption in order to manufacture or process the chemical for "test marketing purposes," subject to certain additional statutory and regulatory criteria. 15 U.S.C. § 2604(h)(1). EPA must disclose receipt of the test marketing exemption

application by publishing notice in the Federal Register "[i]mmediately upon receipt" of the application. *Id.* § 2604(h)(6).

## II.     Congress Envisioned a Transparent Review Process to Enable Public Participation in EPA's Decision-Making.

28.     To ensure, "that the public receive timely notification of any new chemical substance," H.R. Rep. No. 94-1679, at 67-68 (1976) (Conf. Rep.), Congress mandated that EPA promptly inform the public when EPA has received a PMN application, by publishing a notice in the Federal Register within 5 business days of EPA's receipt of the PMN application. 15 U.S.C. § 2604(d)(2) ("not later than five days (excluding Saturdays, Sundays and legal holidays) after the date of the receipt of a [PMN] … the Administrator <u>shall</u> publish in the Federal Register a notice." (emphasis added)). The notice of receipt must: "(A) identif[y] the chemical substance…; (B) list[] the uses of such substance identified in the notice; and (C) in the case of the receipt of information under subsection (b), describe[] the nature of the tests performed on such substance and any information which was developed pursuant to subsection (b) or a rule, order, or consent agreement under [section 4]." *Id.*; *see also* 40 C.F.R. § 720.40(d) (describing contents of a PMN).

29.     EPA must then disclose the contents of the PMN application to any interested person. 15 U.S.C. § 2604(d)(1). To do so, EPA first is required to place "[a]ll information submitted with a [PMN], including any health and safety study and other supporting documentation" in a "public file for that [PMN]." 40 C.F.R. § 720.95; *see id.* § 720.3(kk) (defining "[s]upport documents [to] mean[] material and information submitted to EPA in support of a TSCA section 5 notice, including but not limited to, correspondence,"). Then, EPA is required to make the public file publicly available, both via request from the EPA Docket

Center; and by placing it online in an electronic docket for the PMN at

http://www.regulations.gov. 40 C.F.R. §§ 700.17(b)(1), (2), 720.95.

### III.     Congress Enacted Limited Protections for Confidentiality

30.     In the 2016 amendments, Congress struck a precise balance between the public's

right to information about the chemicals undergoing EPA review and the information that

manufacturers could claim, and EPA could protect, as confidential.

31.     As a result, TSCA significantly limits what information EPA can withhold as

confidential from a PMN public file. First, EPA must disclose all information submitted with the

PMN application to interested persons, except for information that meets the confidentiality

requirements of § 2613. 15 U.S.C. § 2604(d)(1). In turn, under subsection 2613(a), EPA may not

protect information submitted with the PMN unless the manufacturer establishes that: (1) the

information meets the requirements for a trade secret or privileged and confidential information

under the Freedom of Information Act, 5 U.S.C. § 552(b)(4); and (2) the information meets the

requirements for confidentiality established in 15 U.S.C. § 2613(c). 15 U.S.C. § 2613(a).

32.     Crucially, Congress wanted the public to have access to information about the

health and safety of chemical substances undergoing premanufacture review and, thus, provided

that "any health and safety study" along with "any information…from a health and safety study"

submitted with a PMN is categorically ineligible to be treated as confidential by EPA, even if it

would otherwise meet the requirements of subsection 2613(a). *Id.* § 2613(b)(2)(A)(ii), (B).

33.     The only information from a health and safety study that EPA may protect as

confidential is specific "information…that discloses <u>processes</u> used in the manufacturing or

processing of a chemical substance or mixture or, in the case of a mixture, <u>the portion of the</u>

<u>mixture comprised by any of the chemical substances</u> in the mixture." *Id.* § 2613(b)(2)

(emphases added). However, "general descriptions" of such processes are not protected. *Id.*
§ 2613(b)(3)(B).

34.     When a manufacturer claims information is confidential, it must satisfy certain additional criteria before the information is eligible to receive confidential treatment from EPA. Substantively, the submitter must assert that the information meets various confidentiality requirements, including that the manufacturer actually treats the information as confidential and that disclosure would likely cause substantial competitive harm. *Id.* § 2613(c)(1)(B). This assertion must be made "<u>concurrent</u> with submission of the information." 15 U.S.C.
§ 2613(c)(1)(A) (emphasis added); 40 C.F.R. § 720.80(b).

35.     Generally, the manufacturer must substantiate confidentiality claims, and where substantiation is required, the manufacturer must substantiate the claim at the time of submission in order to receive confidential protection from EPA. 15 U.S.C. § 2613(c)(3); 40 C.F.R.
§ 2.204(e) (describing the information that must be submitted); 82 Fed. Reg. 6522, 6522 (Jan. 19, 2017) ("EPA has determined that [15 U.S.C. § 2613(c)(3)] requires an affected business to substantiate all TSCA CBI claims…at the time the affected business submits the claimed information to EPA."). However, certain discrete categories of information are exempted from substantiation ("exempt confidentiality claims"), including, for example, "[m]arketing and sales information," "[i]nformation identifying a supplier or customer," and "[s]pecific production or import volumes." *See* 15 U.S.C. § 2613(c)(2).

36.     For any document which the submitter asserts contains confidential information, the submitter must provide both an unredacted copy and a "sanitized" copy containing redactions of information claimed confidential. 40 C.F.R. § 720.80.

37.     To fulfill its duty to provide the public with all information submitted with the PMN while protecting confidential information, EPA is required to place all valid, sanitized copies of the PMN, attachments, and supporting documents in the public file for examination by interested persons.

38.     EPA has an affirmative duty to disclose the entire PMN application and supporting documentation, 15 U.S.C. § 2604(d)(1), 40 C.F.R. § 720.95, and may only withhold information included in the PMN application from the public if that information meets the confidentiality requirements of § 2613, 15 U.S.C. § 2613(a)(1), (2). Thus, if a manufacturer's claim that information is confidential does not meet the requirements of § 2613, EPA cannot withhold that information from the public file. 15 U.S.C. § 2604(d)(1).

## FACTUAL BACKGROUND

39.     EPA engages in a pattern or practice of violating TSCA's disclosure requirements for PMNs, failing to operate the program in the transparent manner Congress required. When Plaintiffs have sought to utilize the disclosure provisions of TSCA, by requesting the public files for PMN applications in order to gain information on new chemicals being reviewed by EPA, they have been repeatedly stymied by EPA's black-box approach. The result is that Plaintiffs and the public at large are left in the dark when a chemical manufacturer applies to manufacture a new chemical and are unable to provide input to EPA to ensure it protects them from a potentially dangerous new chemical.

40.     Plaintiffs have a pressing need for information about potentially dangerous new chemicals being reviewed and approved by EPA in order to protect their members, as well as the public at large. Plaintiffs seek to provide input in EPA's review of applications to manufacture new chemicals in order to prevent EPA from approving potentially dangerous chemicals. Plaintiffs also seek to alert their members and the public to the potential dangers of chemicals

that are approved—so that people know about dangerous products that may be lurking in their homes and workplaces—and inform the public as to how EPA is operating the new chemicals approval program under § 2604. The information required to be disclosed under TSCA would assist Plaintiffs in achieving their goals.

41.     In violation of TSCA's unambiguous statutory and regulatory mandates, EPA stymies Plaintiffs' efforts by: failing to timely inform Plaintiffs when a new chemical application has been received; and failing to timely make the PMN application and other information supporting the application available for Plaintiffs' examination, thereby hiding crucial information from the public.

**I.      EPA continues to approve potentially dangerous new chemicals under TSCA**

42.     Following the 2016 amendments to TSCA, EPA continues to approve potentially dangerous new chemicals without imposing restrictions needed to protect health and the environment, thereby threatening Plaintiffs' members and the public and environment at large.

43.     Two classes of dangerous chemicals, PFAS and isocyanates—both of which include individual chemicals that have harmed and continue to harm Plaintiffs' members— highlight this disturbing trend. Despite the known dangers of these classes of chemicals, EPA continues to approve the unregulated manufacture of new PFAS and isocyanates.

44.     PFAS are a class of chemicals encompassing more than 5,000 unique substances.

45.     Scientific research demonstrates that members of the class of PFAS can have serious toxic effects. Government and independent academic research, including large epidemiological studies of human PFAS exposure, recently found that exposure to even relatively low levels of some PFAS are associated with liver damage, high cholesterol, risk of thyroid disease, decreased antibody response to vaccines, risk of asthma, decreased fertility, and

decrease in birth weight. Data suggest that some PFAS may also affect the growth, learning, and immune response of infants and older children.

46.     Some PFAS chemicals have also been linked with various cancers, like kidney cancer and testicular cancer, and with endocrine disruption, with potential effects including lowered sperm counts, decreased male genital size, and male infertility. PFAS have also been associated with pregnancy complications.

47.     PFAS are widespread in commerce—they are found in products like waterproof jackets, and carpets to repel water, grease, and stains. They are also used in firefighting foam, especially for use on military bases and in commercial airports.

48.     PFAS are persistent, meaning that they do not easily break down and can persist in the environment for decades. For that reason they have been informally dubbed "forever chemicals."

49.     Some PFAS chemicals are bioaccumulative, meaning that they can build up in the human body once absorbed.

50.     Because of their widespread use and limited regulation on their manufacture, disposal and releases, some of these compounds are now ubiquitous environmental contaminants.

51.     As of March 2020, over 1,400 known locations in nearly every state have been affected by PFAS contamination, and as many as 110 million people in this country may have PFAS-contaminated water supplies.

52.     More than 95 percent of the U.S. population has PFAS in their bodies.

53.     According to the Director of the Center for Disease Control's National Center for Environmental Health/Agency for Toxic Substances and Disease Registry, PFAS contamination presents "one of the most seminal public health challenges for the next decades."

54.     Despite this ongoing crisis, EPA continues to approve the manufacture of new PFAS chemicals under TSCA § 2604. EPA itself admits that, since 2006, it has allowed hundreds of new PFAS chemicals to enter commerce under § 2604. And EPA has approved at least 15 PMN applications to manufacture new PFAS since 2017, with varying levels of protection.

55.     Indeed, just this year, EPA approved a PMN application for a PFAS chemical, designated by EPA as P-17-0245, despite the fact that EPA staff: identified potential risk to workers and the general population; identified hazards including irritation to eyes, mucous membranes, and lungs, mutagenicity, and respiratory sensitization; and concluded that the substance may degrade to a persistent, bioaccumulative, and toxic chemical. Despite these acknowledged risks EPA concluded that the chemical "was not likely to present an unreasonable risk."

56.     Similarly, EPA continues to approve the manufacture of new isocyanate chemicals without imposing needed restrictions, determining that they are "not likely" to present unreasonable risk, despite the fact that isocyanate chemicals are known to cause significant harms to human health and the environment, including death.

57.     Some isocyanates are classified as potential human carcinogens. Isocyanates are known to cause significant respiratory problems, including severe asthma. And repeated exposure to isocyanates can result in a phenomenon known as sensitization, in which later exposure to even relatively low doses of the chemical can result in death.

17

58.     Indeed, it was the release of an isocyanate chemical that was responsible for the tragedy at Bhopal, India, in which over 3,800 people were immediately killed and hundreds of thousands of people were injured.

59.     Isocyanates are used across a wide array of industries and activities, and thus can result in widespread exposure to workers as well as the communities in which they are used. Isocyanates are used in the manufacture of spandex, packing materials, adhesives, sealants, and rubbers, and products containing isocyanates have been developed as a coating material in a wide range of retail, commercial, and industrial settings. As a result, workers are exposed across a broad range of industries. Additionally, isocyanates can persist and bio-accumulate in the environment, potentially exposing people in a community where isocyanates are manufactured or used to contaminated water and air.

60.     Despite these dangers, chemical companies continue to seek to manufacture new isocyanates—submitting numerous PMN applications for new isocyanates since TSCA was amended in 2016—and EPA continues to approve the manufacture of some new isocyanates without restriction, concluding that they are "not likely" to pose unreasonable risk.

61.     Yet, in approving these PMNs, EPA unlawfully deprives the public of crucial information about the new chemicals under review—including information about their health and safety. For example, EPA withheld information about worker exposure submitted with the PMN application for an isocyanate EPA designated as P-18-0282. EPA's own, internal analysis identified a risk that exposure to this chemical could result in sensitization to workers, meaning that workers may fall ill or even die if exposed. Yet, when Plaintiffs requested and received the public file for this chemical, the document relating to worker exposure was redacted in its entirety, meaning that Plaintiffs and the public were deprived of key information about these

risks. Just a few months later, EPA approved the PMN application to manufacture this new

isocyanate without restriction, concluding it was not likely to pose an unreasonable risk, based

on EPA's mere expectation that workers would use appropriate protective equipment, despite the

absence of any legal requirement that workers do so. Because EPA never released the health and

safety information relating to worker exposure that was submitted in the PMN and did not

release its internal analysis of worker risks until after it made its determination, the public was

left in the dark and unable to offer informed comments to the agency.

62.     EPA has also repeatedly approved, without restriction, numerous other chemicals

despite acknowledging that the chemicals pose significant risks to workers. EPA's practice when

it finds that a particular chemical undergoing review presents a risk to workers, is to assume that

all workers will always use appropriate and fully effective Personal Protective Equipment

("PPE"), and on that basis, EPA finds that the chemical is not likely to present an unreasonable

risk, thereby imposing no obligation on the manufacturer to provide, or require its workers to

use, that PPE. For example, EPA analyzed a chemical substance it identified as P-16-0483, for

which EPA identified risks to workers from numerous activities involving the chemical,

including the potential for reproductive toxicity. Nonetheless, EPA ultimately concluded that the

chemical was not likely to present an unreasonable risk because EPA assumed that workers

would use respirators, despite the absence of any legal requirement that they do so. Moreover,

when EDF requested the public file for the PMN for this chemical, EPA withheld numerous

health and safety studies attached to the PMN, denying the public key information underlying

EPA's decision.

63.     Such "not likely" findings reflect systemic flaws in EPA's administration of the

new chemicals program that minimize the risk of new chemicals undergoing review, allowing

potentially dangerous chemicals to enter the market without appropriate safeguards. Despite the fact that their safety has not been affirmatively demonstrated by their manufacturers, these new chemicals will be allowed to enter the market unrestricted. The upshot is that Plaintiffs' members and the public at large will be the "testing grounds" for these new chemicals, exactly the result Congress sought to prevent in enacting TSCA's premanufacture review program for new chemicals. *See* S. Rep. No. 94-698, at 3.

## II.    Plaintiffs need information about the new chemicals being analyzed by EPA.

64.    Plaintiffs represent millions of members who are threatened by EPA's flawed administration of the new chemicals program. Plaintiffs' members have been exposed to toxic chemicals, like PFAS and isocyanates, and Plaintiffs seek to protect their members from further exposure by ensuring that EPA does not allow new, unsafe chemicals into commerce.

65.    For example, Plaintiffs represent some of the communities that have been hardest hit by the PFAS crisis. Sierra Club's North Carolina Chapter represents residents of the Cape Fear River basin, where a chemical plant allowed significant quantities of PFAS to enter the water and air, unrestricted, for years on end. Residents of Maine, represented by EHSC, have to contend with farms covered in PFAS-contaminated fertilizers, resulting in contaminated milk being introduced into the market, and former military installations contaminated by legacy uses of PFAS.

66.    Given the harms Plaintiffs' members have already suffered, Plaintiffs actively work to prevent further exposure to and harm from dangerous new chemicals.

67.    First, Plaintiffs seek to ensure that EPA does not approve new chemicals without imposing sufficient restrictions to protect the public and the environment. To do so, Plaintiffs need the information that TSCA mandates EPA disclose but that EPA routinely withholds or fails to make readily accessible. Plaintiffs need that information to provide informed comments

to EPA during its review of a PMN. Congress envisioned informed citizen involvement in EPA's review of a PMN, as EPA itself has recognized and as reflected by the fact that EPA solicits comments on PMN applications.

68.     But without the information that TSCA mandates EPA disclose—particularly information on the potential health and environmental effects of, and exposures to, a new chemical and on the new chemical's conditions of use—Plaintiffs cannot provide informed comments to assist EPA's review. For example, there may be potential uses of a new chemical that could threaten Plaintiffs but are not identified by the manufacturer in the PMN application as intended uses of the chemical. For Plaintiffs to be able to identify such reasonably foreseen uses of a new chemical, Plaintiffs need to know all the intended conditions of use identified by the manufacturer and whether changes to those identified conditions of use are made during the course of EPA's review. Plaintiffs can only get this relevant information if they have: all versions of the PMN and its attachments, all versions of the Safety Data Sheets ("SDSs") submitted with the PMN, and all communications between EPA and the submitter. Failure to disclose such information thwarts Plaintiffs' efforts to ensure that new chemicals EPA allows to enter commerce are safe and subject to needed restrictions so as to protect Plaintiffs' members, as well as the general public.

69.     For example, Plaintiffs EDF, EHSC, NRDC, and Sierra Club recently submitted comments to EPA on three PMN applications from companies seeking to commence manufacturing new PFAS. These comments were significantly hindered by the lack of publicly available information regarding the PMN applications. The PMN submissions referenced health and safety studies that were not made available in the public file for public review; the public files also redacted key documents describing the physical and chemical properties of the new

chemicals, as well as information on worker exposure and chemical release to the environment, both of which contain information from health and safety studies; and the public files also did not include any correspondence between the submitter and EPA.

70.     As another example, Plaintiff EDF has commented repeatedly on new chemicals that contain "residual" isocyanates, meaning that a portion of the isocyanates are left as unreacted "residuals" after manufacturing other chemicals or in products such as paints and certain plastics. EDF has commented multiple times on whether EPA's actions to address the risks posed by these residuals are sufficient. In at least one case, EPA approved a chemical to the enter the market and proposed, without explanation, allowable levels of residual isocyanates at least 70 times higher than the more health protective level set for other chemicals containing residual isocyanates. In comments, EDF demanded an explanation for the unexplained abandonment of EPA's prior limits on residual isocyanates.

71.     Second, Plaintiffs need information on individual PMNs in order to understand how EPA is administering the new chemicals provisions of TSCA and to provide input on EPA's approach. Plaintiffs have provided input on EPA's overall approach to implementing TSCA's provisions governing EPA's review of PMNs. For example, EDF has filed extensive comments on EPA's implementation of the new chemicals program, including EDF's comments on Implementing the New Chemicals Review Program Under Amended TSCA and EDF's comments on the Updated Working Approach To Making New Chemical Determinations. https://www.regulations.gov/document?D=EPA-HQ-OPPT-2017-0585-0071; https://www.regulations.gov/document?D=EPA-HQ-OPPT-2019-0684-0013. EHSC, NRDC, and CEH have similarly provided comments on EPA's implementation of the new chemicals provisions of TSCA. https://www.regulations.gov/document?D=EPA-HQ-OPPT-2017-0585-

0059; https://www.regulations.gov/document?D=EPA-HQ-OPPT-2019-0684-0010. Such

programmatic comments require Plaintiffs to understand how EPA is administering these

provisions for individual chemicals.

72.     Third, Plaintiffs rely on information from PMN applications to educate their

members and the general public about the potential dangers of chemicals that EPA has approved

and, more broadly, EPA's administration of TSCA's new chemicals program.

73.     For example, since the enactment of the 2016 TSCA Amendments, EDF has

published over 140 posts to its blog regarding EPA's implementation of the TSCA Amendments,

including over 35 posts regarding EPA's implementation of the New Chemicals Program. These

posts seek to inform EDF members, policy makers, and the public—including public health

researchers, and health, environmental, and labor advocates—regarding, among other issues,

EDF's concerns over how EPA determines whether a new chemical is not likely to present

unreasonable risk, how EPA determines whether it has sufficient information to evaluate a new

chemical, whether EPA is protecting workers when evaluating and potentially regulating new

chemicals, and which chemicals are being approved. These posts also inform EDF members and

the public about the dangers of individual chemicals and categories of chemicals—such as

Jeffamine diacrylamide and isocyanates, respectively—that EPA is approving for market entry,

so that members are aware of and may attempt to avoid exposure to them in their daily lives.

EDF's blog posts on new chemicals have been viewed at least 10,900 times.

74.     As part of these blog posts, EDF wrote two posts addressing the risk of residual

isocyanates in a new chemical. Fortunately, because EDF was able to discern that the chemical

substance contained residual isocyanates, EDF was able to warn the public that EPA was

approving chemicals onto the market with unsafe levels of residual isocyanates. But that is not

always the case. Sometimes companies will claim the percent of residuals as CBI, leaving EDF and the public with no way to determine the potential risks of those chemicals.

75.     To convey accurate information to EDF's readers, EDF requires as much information as possible regarding the chemical identity, all of a chemical's potential hazards and exposures, by which company and where the chemical is being manufactured, and how the chemical is used and disposed of. Being unable to identify the location of manufacture, uses, and risks associated with a particular chemical makes it difficult for EDF to draft blog posts or otherwise inform communities potentially impacted by the specific chemical, hampering EDF's efforts to inform impacted communities and educate the public of the potential risks presented by some new chemicals.

76.     Thus, in order to understand and be able to provide robust analyses of EPA's decisions on new chemicals, Plaintiffs have sought information on new chemicals EPA is approving—collectively requesting hundreds of PMN public files from EPA. EDF has used the information it receives through public files requests, in part by conducting analyses that EDF uses to inform its blog posts.

77.     Fourth, information about new chemicals would assist Plaintiffs in advocacy work at the national, state, and local level to protect their members from dangerous classes of chemicals. For example, to better protect members in the Cape Fear River basin who have been exposed to particularly toxic forms of PFAS, such as GenX, CEH has petitioned EPA to use its TSCA authority to order testing in the Cape Fear River basin. Additionally, in North Carolina, Sierra Club has advocated that legislators and regulators restrict the continued manufacture, use, and release of PFAS in the state, while EHSC has undertaken similar work in Maine. Accordingly, additional information, particularly health and safety information, about new PFAS

chemicals could assist Plaintiffs' efforts to prevent further contamination from these dangerous chemicals.

78.     Finally, Plaintiffs work to inform consumers and businesses about chemical risks and exposures, and unlawful withholding of information that is not entitled to confidential treatment make it difficult for Plaintiffs to inform potentially impacted consumers and businesses about new chemicals, reducing the ability of those consumers and businesses to make informed decisions.

79.     For example, Plaintiff CEH works to ensure that schools avoid exposing children to PFAS that is prevalent in disposable foodware by educating school districts about the dangers of this chemical class. Plaintiff NRDC works to educate manufacturers and retailers about the dangers of PFAS in carpets and rugs. And Plaintiff EHSC works to educate retailers about the dangers of PFAS in food packaging.

**III.    EPA's black-box approach stymies Plaintiffs' efforts to get information about new chemicals in a timely manner.**

80.     Given Plaintiffs' need for information about new chemicals—to further their efforts to inform their members about the potential dangers of new chemicals and to protect their members from such chemicals—Plaintiffs have sought to make use of TSCA's disclosure mandates.

81.     Plaintiffs have tracked the notices of receipt that are published in the Federal Register in an attempt to learn whether EPA is reviewing any chemicals that are of concern to Plaintiffs' members and Plaintiffs have requested, received, and reviewed hundreds of PMN public files from EPA.

82.     The PMNs that are the subject of this lawsuit, *see* Table 4, represent 204 of the 1100-plus PMN applications submitted between the enactment of the 2016 TSCA Amendments and the date on which Plaintiffs gave notice of their intent to file this lawsuit.

83.     But Plaintiffs' efforts have been unlawfully stymied by EPA's black-box approach in which: EPA fails to timely notify the public when a PMN has been received; fails to timely disclose the complete PMN application, including all supporting documents, to interested members of the public; and abets manufacturers' attempts to withhold information as confidential that is not entitled to confidential treatment under TSCA. In doing so, EPA repeatedly violates TSCA's numerous disclosure requirements, thereby denying Plaintiffs information to which they are legally entitled.

**A.      EPA does not timely notify the public when it receives an application to manufacture a new chemical, and the belated notices EPA provides are incomplete**

84.     EPA universally fails to timely notify the public when it has received an application to manufacture a new chemical, and when EPA belatedly publishes notice that it has received a PMN application, the notice is incomplete. These recurrent failures prevent members of the public from learning that EPA is reviewing a PMN for a new chemical that, if approved, may threaten their health and well-being and, consequently, impairs their ability to provide input to EPA.

85.     In order to effectively participate in EPA's review process, Plaintiffs must timely know what chemicals are under EPA review and have information about the chemical—such as the chemical's uses and the nature and results of tests conducted on the chemical—to know whether it is of potential concern to their members. Accordingly, Congress required EPA to publish the notice of receipt of a PMN application, containing basic information about the chemical and the contents of the PMN application, within 5 business days. 15 U.S.C. §

2604(d)(1), (2). Compliance with these notice requirements ensures that Plaintiffs have sufficient time and information to participate in the 90-day period EPA has to review and render a determination on the application.

86.     EPA does not timely publish notices of receipt in the Federal Register as mandated by TSCA. For the PMNs that are the subject of this Complaint, *see* Table 1, EPA delayed publication of the notice of receipt, on average, by more than 87 days from the date on which publication was legally required. Indeed, since TSCA was amended in 2016, EPA has never timely published notice of receipt of a PMN in the Federal Register.

87.     Given that Congress gave EPA 90 days to review and make a determination on a PMN application (with an option for extensions), *see* 15 U.S.C. § 2604(a)(1)(B), EPA's recurring delays in providing notice means that members of the public typically do not learn key information about the chemicals EPA is reviewing—such as what the chemical is, its potential uses, or where it will be manufactured—until late in, or even after the conclusion of, the PMN review process, hindering their ability to provide robust, informed comments before EPA makes a decision. Indeed, since the beginning of 2017, EPA approved at least 35 of the PMN applications for which Plaintiffs requested the public file before it published the required notice, meaning that no member of the public could provide input for EPA to consider before EPA determined that the chemicals were not likely to present unreasonable risk and approved the new chemicals without restriction.

88.     When EPA does belatedly publish a notice of receipt of a PMN application in the Federal Register, the notice is regularly incomplete. EPA regularly fails to publish a list of all test data submitted, as required by 40 C.F.R. § 720.70(b)(3), or descriptions of the test data performed under § 2604(b), as required by 15 U.S.C. § 2604(d)(2)(C). By failing to publish the

information about test data, EPA hinders the public's ability to understand whether the new chemical undergoing review may be of concern.

89.     For the dozens of PMNs contained in Table 2, the manufacturers submitted data from hundreds of tests that should have been included in the notice of receipt. Yet, in the notice of receipt, EPA failed to list all the test data submitted, as required by 40 C.F.R. § 720.70(b)(3), and EPA failed to describe the test data submitted, as required by 15 U.S.C § 2604(d)(2)(C).

90.     Similarly, EPA fails to timely publish notices of receipt of test marketing exemption applications. EPA must publish a notice of receipt of a test marketing exemption application "[i]mmediately upon receipt," 15 U.S.C. § 2604(h)(6), but for each test marketing exemption application received since the enactment of the 2016 TSCA Amendments, EPA failed to timely publish notice of its receipt. *See* Table 3. Instead, EPA took an average of 97 days to publish the mandated notice, if it published the notice at all. *Id.* Given that EPA only has 45 days to approve the test marketing exemption application, EPA's lack of timely notice means that the public cannot comment on these applications.

**B.      EPA fails to make the public files available online at regulations.gov**

91.     EPA fails to make the public file for each PMN readily accessible online as required by its own regulations, which mandate that EPA place the public file for each PMN application in a unique electronic docket at http://www.regulations.gov. 40 C.F.R. §§ 700.17(b)(1), 720.95. Such failures require the public to undertake a time-intensive process for requesting and receiving public files that further delays their ability to understand the chemicals that are being reviewed and provide timely input to EPA that can inform the agency's decision-making.

92.     Due to EPA's failure to make public files available online, Plaintiffs were forced to request hundreds of public files from EPA's Docket Center for PMN applications for PFAS, isocyanates, and various other chemicals of concern to Plaintiffs.

93.     The public files Plaintiffs received from the EPA Docket Center were copied by EPA staff onto a CD-ROM, which either was then sent to Plaintiffs via the mail or was picked up in person by Plaintiffs' staff. In some cases, Plaintiffs received the CD-ROM over a month after submitting a request. In others, EPA sent only part of the public files that were requested to Plaintiffs.

94.     Such long delays impede the public's ability to provide input to EPA during the public comment period EPA offered and before it completed its review of the PMN applications.

95.     EPA has now announced that they will place PMN public files online at EPA's ChemView website, https://chemview.epa.gov/chemview/. Yet, as of the filing of this Complaint, EPA had failed to place any public file for a PMN application submitted before May 2019 on the ChemView webpage, had failed to place several PMN applications submitted after May 2019 on the ChemView webpage, and had failed to update its regulations to reflect the fact the PMNs are now being placed on the ChemView website. Thus, EPA continues to violate its own regulations and thereby misinforms the general public as to the actual online location of PMN public files.

### C.     EPA fails to turn over documents that must be in the public file

96.     Under EPA's black-box approach, the agency routinely fails to disclose all, non-confidential materials from a PMN application and supporting documents to members of the public who seek information about a new chemical under EPA review as required under TSCA. *See* 15 U.S.C. §§ 2604(d)(1)(C), 2613; 40 C.F.R. § 720.95.

97.     In response to public file requests, EPA routinely fails to disclose:

(1) health and safety studies and safety data sheets submitted with the PMN application;
(2) all versions of the PMN application and supporting correspondence; and
(3) other information for which there is no valid basis for confidential treatment under TSCA.

98.     Indeed, in response to Plaintiffs' request for PMN public files, EPA committed hundreds of such violations of §§ 2605 and 2613.

99.     In withholding this information, EPA significantly impairs the public's ability to understand the potential dangers posed by new chemicals undergoing EPA review.

### 1.     EPA hides information from health and safety studies, including safety data sheets

100.    EPA routinely withholds or redacts health and safety studies and information from health and safety studies—the very information TSCA states is not entitled to confidential treatment—from the PMN public files it makes available for examination by interested persons. This pattern of unlawful conduct undermines one of the key purposes of TSCA: that the public have information about the potential harmful effects of chemicals. This not only hinders the public's ability to provide input to EPA, it prevents members of the public from making informed choices about the products they buy and use.

101.    Under TSCA, health and safety studies (and any information therefrom) are not entitled to confidential treatment by EPA, 15 U.S.C. § 2613(b)(2), and therefore, must be included in the PMN public file that EPA makes available to interested persons. 15 U.S.C. § 2604(d)(1); 40 C.F.R. §§ 720.90, 720.95. EPA may only protect from disclosure discrete information that would disclose: the specific processes used in manufacturing or processing a chemical; or the composition of a mixture containing the chemical. 15 U.S.C. § 2613(b)(2).

102.    Thus, when EPA receives a PMN or supporting document, in which the manufacturer has claimed that health and safety information is confidential and entitled to

protection from disclosure, EPA may not withhold the health and safety information and must

make it available to interested persons. 15 U.S.C. § 2604(d)(1); 40 C.F.R. §§ 720.90, 720.95.

103.     Yet, when providing Plaintiffs with PMN public files, EPA has routinely

withheld, as confidential, health and safety information that must be disclosed. EPA withheld

hundreds of health and safety studies (or associated information) from at least 53 of the 204

public files provided to Plaintiffs, including at least 163 studies that EPA withheld in their

entirety. *See* Table 5. EPA unlawfully allowed partial redactions of information from many

additional studies, despite the fact that these redactions were not limited to information that

discloses the process of manufacturing or processing the chemical or the composition of a

chemical mixture.

104.     Additionally, EPA routinely withheld safety data sheets, which necessarily

contain health and safety information, from the public files provided to Plaintiffs. Safety data

sheets, which chemical manufacturers must develop pursuant to the Occupational Safety and

Health Act, provide users of a chemical, such as workers, information about the potential hazards

of the chemical and information about how to protect themselves from harm. This information is

derived from health and safety studies, e.g., toxicological, ecotoxicological, or exposure

information, 29 C.F.R. § 1910.1200(g)(2), and thus EPA may not protect this information as

confidential, 15 U.S.C. § 2604(d)(1); 40 C.F.R. §§ 720.90, 720.95. Moreover, because the safety

data sheet must be widely distributed pursuant to federal law, *id.* § 1910.1200(g)(8), (11),

42 U.S.C. § 11021(a), EPA cannot protect an entire safety data sheet as confidential. *See*

15 U.S.C. § 2613(c)(1)(B)(i) (requiring submitter to have "taken reasonable measures to protect

the confidentiality" of the information); *also id.* § 2613(d)(8) (authorizing disclosure of

information that "is required to be made public under [another] provision of Federal law").

31

105.     Nonetheless, EPA routinely withholds safety data sheets from the public files it makes available to interested persons. Table 6 identifies 51 PMN public files where EPA did so.

106.     This denial of information on potential health impacts of new chemicals impedes the public's ability to understand and meaningfully participate in EPA's decision-making process.

107.     The public file for the PMN P-17-0245, a PFAS, illustrates the deficiencies in EPA's handling of health and safety information, including safety data sheets.

108.     When EPA provided Plaintiffs with the public file containing the PMN application, the file contained no health and safety information whatsoever, as the health and safety studies and safety data sheets were redacted in their entirety.

109.     Subsequently, EPA made a final determination that the chemical is not likely to present unreasonable risk, approving the chemical without restriction. That final determination revealed that, in EPA's original screening analysis, EPA staff: identified potential risks to workers and the general population; identified hazards including irritation to eyes, mucous membranes and lungs, mutagenicity, and respiratory sensitization; and concluded that the substance may degrade to a persistent, bioaccumulative, and toxic chemical.

110.     But without the health and safety information that is submitted with the PMN, the public is left in the dark, with little-to-no ability to comment on the application before EPA makes a determination, to understand the basis for EPA's decision, or to assess its validity.

2.    **EPA also hides other information relevant to the potential risks presented by new chemicals**

111.     When EPA provides PMN public files to interested members of the public, EPA fails to provide documents that shed light on the activities the chemical may be involved in. In doing so, EPA hinders people from understanding whether a new chemical may be used in their

workplace, found in a product in their home, or disposed of in their community, and thus prevents them from knowing whether they have an interest in EPA's review of the chemical.

112.    EPA's review of a PMN involves a dialogue between the agency and the chemical manufacturer. EPA meets or corresponds with manufacturers and communicates what risks EPA has identified based EPA's review of the PMN application. Using that input from EPA, manufacturers often provide EPA with amended PMNs or submit additional supporting information. Relying on those additional submissions, EPA may revise its assessment of the riskiness of the new chemical, and reach a different determination than it would have had the manufacturer not amended its application or provided the additional information.

113.    As part of this iterative process, a PMN submitter may submit multiple versions of the PMN application and multiple pieces of correspondence. EPA's "A Working Approach for Making Determinations under TSCA [§ 2604]" expressly contemplates that manufacturers will amend their submissions to EPA after first submitting their PMN application and instructs manufacturers on how such later submissions may affect EPA's analysis.

114.    In particular, manufacturers often amend their PMNs by submitting new versions that modify the intended conditions of use identified in the application. Manufacturers do so because, according to EPA's "Working Approach for Making Determinations under TSCA [§ 2604]," EPA evaluates the activities involving the new chemical that the manufacturer "intends" differently from other conditions of use, such as reasonably foreseeable uses by individuals in addition to the manufacturer. Thus, when a manufacturer amends a PMN to delete riskier activities from the intended conditions of use it identified in the application, that amendment can increase the likelihood that EPA will determine that the chemical is not likely to present unreasonable risk and approve the chemical without restriction.

115.    The upshot of this iterative process is that, in some cases, manufacturers continue to amend their PMN applications until EPA makes a determination that the new chemical is not likely to present an unreasonable risk and approves the PMN without imposing any restrictions on the chemical to protect public health or the environment.

116.    Despite its obligation to provide the entire PMN and all supporting documents to interested members of the public, EPA has routinely failed to provide these iterative manufacturer submissions when it releases PMN public files. Instead, EPA has typically provided only a single version, usually the one submitted most recently prior to a request for the public file.

117.    Such failures hinder Plaintiffs' ability to have an informed understanding of: their members' potential exposure to the chemical under review; the potential risks posed by the chemical; and EPA's decision-making process generally.

118.    For example, for the PMN P-17-0245, a PFAS, the submitter first submitted the PMN application in February 2017. EPA identified potential risk to workers and the general population and concluded that the substance may degrade to a persistent, bioaccumulative, and toxic chemical. Despite these risks, EPA made a final determination in April 2019 that the PFAS chemical substance is not likely to present unreasonable risk under the intended conditions of use described in the PMN.

119.    EPA's own decision-documents, released after it approved the chemical, show that between the initial conclusion that the chemical may pose significant risk and the final decision to approve the chemical, there was significant back-and-forth between EPA and the manufacturer. After receiving the PMN application and identifying risks from the chemical, EPA requested additional details from the manufacturer, who then provided EPA with multiple

modified versions of the PMN and a document with the file name "Additional details requested by Engineer" over the course of EPA's review. EPA's own "engineering report" for this chemical also refers to multiple versions of the PMN, as well as extensive correspondence back-and-forth between the PMN submitter and EPA (all or most of which was not provided in the public file).

120.    Yet, in the public file for P-17-0245 that EPA provided to Plaintiffs, EPA provided only a single version of the PMN application and, at most, one piece of correspondence.

121.    Without these materials, Plaintiffs are left in the dark, unable to understand what changed between EPA's initial conclusion that the new PFAS chemical warranted regulation and EPA's ultimate determination that no regulation was warranted.

122.    This iterative process also appears to have occurred with P-16-0483, described above in ¶ 62.

123.    Such failures by EPA are not isolated: in Table 7, Plaintiffs identify 94 PMNs where EPA failed to provide Plaintiffs with all versions of the PMN application; and in Table 8, 160 PMNs where EPA failed to provide Plaintiffs with any correspondence from the PMN submitter. EPA's failures to disclose these materials violates its duties to disclose all non-confidential material in the public file that it makes available to interested persons. 15 U.S.C. §§ 2604(d)(3), 2613; 40 C.F.R. § 720.95.

> **3.    EPA withholds other information that does not meet the statutory standard for confidentiality**

124.    EPA routinely withholds non-confidential information contained in PMN applications from the public files it provides to interested persons, based on clearly incorrect claims by manufacturers that the information should be confidential. This practice violates

EPA's obligations to include all, non-confidential material in the public file that it makes available to interested persons. *See* 15 U.S.C. §§ 2604(d)(3), 2613.

125.    When EPA makes a PMN public file available to interested persons, EPA must disclose all information submitted with the PMN, along with all supporting information, unless the information is entitled to confidential treatment under § 2613. *Id.* Generally, to be entitled to confidential treatment, a chemical manufacturer that submits a PMN must substantiate confidentiality claims at the time of submission ("non-exempt confidentiality claims"), 15 U.S.C. § 2613(c)(1)(A), (3), 82 Fed. Reg. at 6522, unless such claims fall within one of six enumerated categories of confidential information ("exempt confidentiality claims"). *Id.* § 2613(c)(2). Thus, if the chemical manufacturer fails to provide the required information to substantiate its confidentiality claim and the information is not exempt, EPA cannot withhold the information from the public.

126.    EPA routinely violates this requirement in two ways.

127.    First, EPA routinely fails to follow TSCA's substantiation requirements, either by: protecting information as confidential when the submitter failed to submit a substantiation document; or failing to include substantiation documents in the public files it provides to the public.

128.    Where a manufacturer makes a non-exempt confidentiality claim but fails to provide a substantiation document to EPA, EPA is not authorized to treat the information as confidential and thereby withhold it from the public. 15 U.S.C. § 2613(c)(3); 82 Fed. Reg. at 6522. If the PMN submitter does provide a substantiation document, the substantiation document must be placed in the public file. 40 C.F.R. § 720.95; 40 C.F.R. § 720.80(b)(2).

129.    Yet, for each of the 90 PMNs in Table 9, the public file contains redactions of information claimed confidential, without containing any substantiation document whatsoever. Many of the documents redacted from the public files in Table 9 contain information that facially does not fall within one of the § 2613(c)(2) exemptions from substantiation. EPA's failure to disclose a substantiation document for these PMNs indicates either that EPA is unlawfully protecting information that is non-exempt, despite the manufacturers' failure to provide substantiation documents, or that EPA is unlawfully withholding the substantiation documents the manufacturers did submit.

130.    On information and belief, PMN submitters provided EPA with a substantiation document for some of the PMNs listed in Table 9, but not for others.

131.    EPA's failures to provide Plaintiffs with all non-confidential information in the PMN application and supporting documents, including substantiation documents, for the PMNs in Table 9 violate EPA's duty to make the whole PMN available to interested persons. 15 U.S.C. §§ 2604(d)(1), 2613, 40 C.F.R. 720.95.

132.    Second, EPA routinely withholds information as confidential, based on the manufacturer's assertion that it falls within one of six enumerated categories of confidential information that are exempt from substantiation, even though the information, on its face, does not fall within one of the six exemptions.

133.    Chemical manufacturers misuse these exemptions, claiming that information submitted as part of a PMN application is exempt under § 2613(c)(2) even though the information is plainly not exempt, and EPA has a pattern or practice of unlawfully withholding such information despite the fact that the information is not otherwise entitled to confidential treatment. For example, manufacturers have regularly claimed that health and safety studies, and

37

information from such studies, relating to "occupational exposure," "environmental releases," and "pollution prevention information" are not only confidential, but fall within one of the six exemptions from substantiation. *See* Table 10. Despite the fact that such health and safety information plainly is not entitled to confidential treatment by EPA, *see* 15 U.S.C. § 2613(b)(2), EPA withholds those documents as confidential from members of the public who request them.

134.    For each of the 16 PMNs identified in Table 10, EPA withheld information based on a submitter's claim that information was exempt when it facially was not. EPA's failure to provide Plaintiffs with the entire PMN application and supporting documents violates EPA's duty to make the whole PMN available to interested persons. 15 U.S.C. §§ 2604(d)(1), 2613.

135.    In granting confidential treatment to information that is ineligible and thereby failing to disclose such information to the public, EPA fails to fulfill its duties to disclose the PMN and all supporting information to the public and aids submitters' efforts to hide relevant information about new chemicals, including crucial health and safety information, from the public.

## CLAIMS FOR RELIEF

**Count I: Violations of duty to timely publish notices of receipt of PMNs**

136.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

137.    For each of the PMNs listed in Table 1, EPA failed to publish the required notices of receipt in the Federal Register within five business days of receipt of those PMNs as required by 15 U.S.C. § 2604(d)(2).

138.    EPA's failures to comply with the notice requirements of 15 U.S.C. § 2604(d)(2) for the PMNs contained in Table 1: (1) constitute violations of TSCA, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty

which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by, 15 U.S.C. § 2604(d)(2).

**Count II: Violations of duty to publish complete notices of receipt of PMNs**

139.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

140.    For each of the PMNs listed in Table 2, the notice of receipt that EPA published in the Federal Register failed to include a list or description of any test data submitted with the PMN despite the fact that the PMN included such test data. EPA should have listed all the test data submitted under § 720.70(b)(3) and EPA should have described the test data submitted under § 2604(b). 15 U.S.C. § 2604(d)(2)(C).

141.    The failures by EPA to comply with the notice requirements of 15 U.S.C. § 2604(d)(2)(C) and 40 C.F.R. § 720.70(b)(3) for the PMNs contained in Table 2: (1) constitute violations of TSCA or a rule promulgated under § 2604 within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. § 2604(d)(2)(C) and 40 C.F.R. § 720.70(b)(3).

**Count III: Violations of duty to publish notice of receipt of an application for a test marketing exemption**

142.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

143.    For each of the applications for test marketing exemptions listed in Table 3, EPA did not "immediately" publish the notice of receipt of the application as required by 15 U.S.C.

§ 2604(h)(6). Nor did EPA summarize the information provided in the application as required by § 720.38(c). EPA also did not inform the public of the receipt of the test marketing exemption application until after the 45-day period for making a determination on the application had expired, depriving interested persons of the opportunity to comment on the application that is required by 15 U.S.C. § 2604(h)(6).

144.    EPA's failures to comply with the "immediate[]" notice requirements of 15 U.S.C. § 2604(h)(6) and 40 C.F.R. § 720.38(c) for the test marketing exemptions listed in Table 3: (1) constitute violations of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. § 2604(h)(6) and 40 C.F.R. § 720.38(c).

**Count IV: Violations of duty to make PMNs publicly available online at regulations.gov**

145.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

146.    For each PMN cited in Table 4, EPA violated its duty to make complete PMN public files available in an electronic docket at http://www.regulations.gov, as required by 15 U.S.C. § 2604(d)(1), (b)(3) and 40 C.F.R. § 700.17(b)(1), 720.95, which (1) constitutes a violation of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute a failure of "[EPA] to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. § 2604(d)(1) and 40 C.F.R. §§ 700.17(b)(1), 720.95.

**Count V: Violations of duty to make health and safety studies available for examination by interested persons**

147.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

148.    In response to Plaintiffs' requests for PMN public files, EPA routinely provided public files in which health and safety studies were redacted in a manner that violates TSCA's requirement to make such studies available for examination by interested persons, 15 U.S.C. § 2604(d)(1), 40 C.F.R. § 720.90, 720.95, and violates TSCA's prohibition on treating such information as confidential, 15 U.S.C. § 2613.

149.    EPA has improperly redacted information from hundreds of health and safety studies listed in Table 5, which includes at least 163 such studies which were redacted or withheld in their entirety. These failures by EPA to comply with 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. §§ 720.90, 720.95 : (1) constitute violations of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. §§ 720.90, 720.95.

150.    Given EPA's repeated practice of improperly withholding health and safety studies and information, there may be other public files provided to Plaintiffs, beyond those contained in Table 5, where EPA improperly withheld information from health and safety studies but that the Plaintiffs have been unable to identify.

151.    On information and belief: for the PMNs identified in Table 4, EPA provided public files to the Plaintiffs that failed to include health and safety studies submitted by the

manufacturers. For each such file, EPA failed to comply with 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. §§ 720.90, 720.95, which: (1) constitutes a violation of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitutes a failure of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) further establishes EPA's pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. §§ 720.90, 720.95.

### Count VI: Violations of duty to make safety data sheets available for examination by interested persons

152.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

153.     For the PMNs in Table 6, EPA unlawfully withheld the safety data sheet, in whole or in part, from the public files made available for examination by the Plaintiffs. EPA's failures to disclose the safety data sheet to Plaintiffs are failures to comply with 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. §§ 720.90, 720.95, which: (1) constitute violations of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. §§ 720.90, 720.95.

### Count VII: Violations of duty to make all versions of PMN available for examination by interested persons

154.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

155.     For the PMNs identified in Table 7, EPA provided incomplete public files that contained fewer versions of the PMN and its supporting documentation than appear to have been submitted. Thus, EPA failed to make available for examination all versions of the PMN or supporting documents, as required by 15 U.S.C. § 2604(d)(1) and 40 C.F.R. § 720.95. The failures by EPA to comply with 15 U.S.C. § 2604(d)(1) and 40 C.F.R. § 720.95 for the PMNs in Table 7: (1) constitute violations of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to comply with the nondiscretionary duties established by 15 U.S.C. § 2604(d)(1) and 40 C.F.R. § 720.95.

**Count VIII:  Violations of duty to make correspondence related to PMNs available for examination by interested persons**

156.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

157.     On information and belief, for each PMN identified in Table 8, EPA received correspondence supporting the PMN that EPA failed to make available when it provided public files to the Plaintiffs, as required by 15 U.S.C. § 2604(d)(1) and 40 C.F.R. § 720.95, which: (1) constitutes a violation of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitutes a failure of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establishes that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. § 2604(d)(1) and 40 C.F.R. § 720.95.

**Count IX: Violations of duty to make substantiation documents available for examination**

**by interested persons**

158.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

159.    Table 9 identifies those PMNs where EPA provided Plaintiffs with a public file in which information submitted with a PMN was withheld as confidential but the public file lacked a substantiation document.

160.    On information and belief, EPA withheld information from the public files identified in Table 9 that is not exempt from substantiation under § 2613(c)(2).

161.    On information and belief, the manufacturer failed to submit a substantiation document for some PMNs contained in Table 9, and EPA's failures to disclose all information in the public files for those PMNs to Plaintiffs are failures to comply with 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. § 720.95, which: (1) constitute violations of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to comply with the nondiscretionary duties established by 15 U.S.C. § 2604(d)(1), 2613 and 40 C.F.R. § 720.95.

162.    On information and belief, the manufacturer submitted a substantiation document for some PMNs contained in Table 9, and EPA's failures to disclose the substantiation documents for those PMNs to Plaintiffs are failures to comply with 15 U.S.C. §§ 2604(d)(1), 2613 and 40 C.F.R. § 720.95, which: (1) constitute violations of TSCA or a rule promulgated under § 2604, within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitute failures of "the Administrator to perform any act or duty under this chapter which is not discretionary,"

44

15 U.S.C. § 2619(a)(2); and (3) establish that EPA has a pattern or practice of violating the requirements of, and failing to comply with the nondiscretionary duties established by 15 U.S.C. § 2604(d)(1) and 40 C.F.R. § 720.95.

**Count X: Violations of duty to disclose information where the manufacturer has asserted it is confidential under the § 2613(c)(2) exemptions but the information facially does not qualify under any of the exemptions**

163.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

164.    For the PMNs identified in Table 10, EPA withheld documents, in whole or in part, based on the manufacturer's assertion that the information was confidential under one of the six exemptions from substantiation in § 2613(c)(2), but the exemptions were clearly inapplicable to the withheld information.

165.    In withholding as confidential the information identified in Table 10, EPA failed to comply with 15 U.S.C. §§ 2604, 2613, which: (1) constitutes a violation of TSCA within the meaning of 15 U.S.C. § 2619(a)(1); (2) constitutes a failure of "the Administrator to perform any act or duty under this chapter which is not discretionary," 15 U.S.C. § 2619(a)(2); and (3) establishes that EPA has a pattern or practice of violating the requirements of, and failing to fulfill the nondiscretionary duties established by 15 U.S.C. §§ 2604, 2613.

## PRAYER FOR RELIEF

166.    WHEREFORE, Plaintiffs respectfully request, for each of the violations enumerated in Counts I-X, above, that the Court:

(1)    Declare that each of the Defendant Administrator's failures to take action is a failure to perform an act or duty which is not discretionary within the meaning of 15 U.S.C.

§ 2619(a)(2), and order Defendant Administrator to take action to fulfill these non-discretionary duties in accordance with an expeditious deadline specified by this Court;

(2)     Declare that each of the Defendants' failures to take action is a violation of TSCA, or rules promulgated thereunder, within the meaning 15 U.S.C. § 2619(a)(1) and order Defendants to remedy these violations in accordance with an expeditious deadline specified by this Court;

(3)     Declare that these failures establish that Defendants have a pattern or practice of failing to perform acts and duties which are not discretionary and violating TSCA, or rules promulgated thereunder, and order Defendants to refrain from further failing to perform the non-discretionary acts or duties mandated by the relevant statutory and regulatory provisions and refrain from further violating the relevant provisions of TSCA and rules promulgated thereunder;

(4)     Retain jurisdiction to ensure compliance with this Court's decree;

(5)     Award Plaintiffs the costs of this action, including attorney's fees; and,

(6)     Grant such other relief as the Court deems just and proper.

**Table 1: PMNs for which EPA untimely published notice of receipt in the Federal Register**

| PMN Case No. | Date on which EPA received the PMN[1] | Date of Violation (5 business days after Received Date)[2] | Date of Publication of Notice of Receipt in the Federal Register | No. of Days Publication was Delayed |
|---|---|---|---|---|
| P-14-0314 | February 7, 2014 | February 17, 2014 | September 16, 2014 | 211 |
| P-14-0482 | April 2, 2014 | April 10, 2014 | September 16, 2014 | 159 |
| P-15-0726 | September 4, 2015 | September 14, 2015 | November 13, 2015 | 60 |
| P-16-0192 | January 24, 2016 | February 1, 2016 | March 16, 2016 | 44 |
| P-16-0281 | March 30, 2016 | April 7, 2016 | May 2, 2016 | 25 |
| P-16-0292 | April 5, 2016 | April 13, 2016 | June 2, 2016 | 50 |
| P-16-0301 | April 6, 2016 | April 14, 2016 | June 2, 2016 | 49 |
| P-16-0302 | April 6, 2016 | April 14, 2016 | June 2, 2016 | 49 |
| P-16-0303 | April 6, 2016 | April 14, 2016 | June 2, 2016 | 49 |
| P-16-0340 | April 26, 2016 | May 4, 2016 | June 2, 2016 | 29 |
| P-16-0341 | April 27, 2016 | May 5, 2016 | June 2, 2016 | 28 |
| P-16-0343 | April 27, 2016 | May 5, 2016 | June 2, 2016 | 28 |
| P-16-0344 | April 27, 2016 | May 5, 2016 | June 2, 2016 | 28 |
| P-16-0345 | April 28, 2016 | May 6, 2016 | June 2, 2016 | 27 |
| P-16-0348 | May 7, 2016 | May 16, 2016 | July 12, 2016 | 57 |
| P-16-0349 | May 11, 2016 | May 19, 2016 | July 12, 2016 | 54 |
| P-16-0351 | May 2, 2016 | May 10, 2016 | July 12, 2016 | 63 |
| P-16-0354 | May 5, 2016 | May 13, 2016 | July 12, 2016 | 60 |
| P-16-0355 | May 5, 2016 | May 13, 2016 | July 12, 2016 | 60 |
| P-16-0366 | May 11, 2016 | May 19, 2016 | July 12, 2016 | 54 |
| P-16-0373 | May 13, 2016 | May 23, 2016 | July 12, 2016 | 50 |
| P-16-0380 | May 18, 2016 | May 26, 2016 | July 12, 2016 | 47 |
| P-16-0381 | May 18, 2016 | May 26, 2016 | July 12, 2016 | 47 |
| P-16-0382 | May 18, 2016 | May 26, 2016 | July 12, 2016 | 47 |
| P-16-0383 | May 18, 2016 | May 26, 2016 | July 12, 2016 | 47 |
| P-16-0384 | May 18, 2016 | May 26, 2016 | July 12, 2016 | 47 |
| P-16-0385 | May 18, 2016 | May 26, 2016 | July 12, 2016 | 47 |
| P-16-0391 | May 23, 2016 | May 31, 2016 | July 12, 2016 | 42 |
| P-16-0392 | May 25, 2016 | June 2, 2016 | July 12, 2016 | 40 |

[1] The Listed Parties based the date of receipt based on the "Received Date" listed in the EPA PMN Table, see Notice of Intent, 2 n.1, which may not accurately reflect the date on which EPA first received the PMN.

[2] In turn, the date of violation is five business days from the Received Date, listed in the EPA PMN Table.

| P-16-0400 | June 6, 2016 | June 14, 2016 | July 29, 2016 | 45 |
|---|---|---|---|---|
| P-16-0401 | June 22, 2016 | June 30, 2016 | October 27, 2016 | 119 |
| P-16-0403 | June 15, 2016 | June 23, 2016 | July 29, 2016 | 36 |
| P-16-0415 | June 17, 2016 | June 27, 2016 | July 29, 2016 | 32 |
| P-16-0422 | June 21, 2016 | June 29, 2016 | July 29, 2016 | 30 |
| P-16-0426 | June 22, 2016 | June 30, 2016 | October 27, 2016 | 119 |
| P-16-0446 | June 24, 2016 | July 4, 2016 | July 29, 2016 | 25 |
| P-16-0459 | July 14, 2016 | July 22, 2016 | August 24, 2016 | 33 |
| P-16-0466 | July 11, 2016 | July 19, 2016 | August 24, 2016 | 36 |
| P-16-0483 | July 18, 2016 | July 26, 2016 | August 24, 2016 | 29 |
| P-16-0484 | July 18, 2016 | July 26, 2016 | August 24, 2016 | 29 |
| P-16-0492 | July 27, 2016 | August 4, 2016 | August 24, 2016 | 20 |
| P-16-0509 | August 5, 2016 | August 15, 2016 | November 10, 2016 | 87 |
| P-16-0510 | August 5, 2016 | August 15, 2016 | November 10, 2016 | 87 |
| P-16-0512 | August 9, 2016 | August 17, 2016 | November 10, 2016 | 85 |
| P-16-0515 | August 9, 2016 | August 17, 2016 | November 10, 2016 | 85 |
| P-16-0518 | August 12, 2016 | August 22, 2016 | November 10, 2016 | 80 |
| P-16-0519 | August 12, 2016 | August 22, 2016 | November 10, 2016 | 80 |
| P-16-0532 | August 25, 2016 | September 2, 2016 | November 10, 2016 | 69 |
| P-16-0538 | August 26, 2016 | September 5, 2016 | November 10, 2016 | 66 |
| P-16-0545 | September 2, 2016 | September 12, 2016 | November 10, 2016 | 59 |
| P-16-0575 | September 15, 2016 | September 23, 2016 | November 10, 2016 | 48 |
| P-16-0578 | October 21, 2016 | October 31, 2016 | November 28, 2016 | 28 |
| P-16-0580 | September 19, 2016 | September 27, 2016 | November 10, 2016 | 44 |
| P-16-0581 | September 19, 2016 | September 27, 2016 | November 10, 2016 | 44 |
| P-16-0587 | September 22, 2016 | September 30, 2016 | November 10, 2016 | 41 |
| P-16-0588 | September 22, 2016 | September 30, 2016 | November 10, 2016 | 41 |
| P-16-0592 | January 23, 2017 | January 31, 2017 | March 16, 2017 | 44 |
| P-17-0008 | November 2, 2016 | November 10, 2016 | December 16, 2016 | 36 |
| P-17-0009 | October 13, 2016 | October 21, 2016 | November 28, 2016 | 38 |
| P-17-0014 | February 20, 2017 | February 28, 2017 | May 11, 2017 | 72 |
| P-17-0016 | October 27, 2016 | November 4, 2016 | November 28, 2016 | 24 |
| P-17-0017 | October 27, 2016 | November 4, 2016 | November 28, 2016 | 24 |
| P-17-0018 | October 27, 2016 | November 4, 2016 | November 28, 2016 | 24 |
| P-17-0019 | October 27, 2016 | November 4, 2016 | November 28, 2016 | 24 |
| P-17-0020 | October 27, 2016 | November 4, 2016 | November 28, 2016 | 24 |
| P-17-0021 | October 27, 2016 | November 4, 2016 | November 28, 2016 | 24 |
| P-17-0024 | October 26, 2016 | November 3, 2016 | November 28, 2016 | 25 |
| P-17-0025 | October 26, 2016 | November 3, 2016 | November 28, 2016 | 25 |
| P-17-0112 | November 16, 2016 | November 24, 2016 | December 16, 2016 | 22 |
| P-17-0115 | November 16, 2016 | November 24, 2016 | December 16, 2016 | 22 |

| P-17-0117 | November 17, 2016 | November 25, 2016 | December 16, 2016 | 21 |
| P-17-0118 | November 17, 2016 | November 25, 2016 | December 16, 2016 | 21 |
| P-17-0121 | November 8, 2016 | November 16, 2016 | December 16, 2016 | 30 |
| P-17-0144 | November 18, 2016 | November 28, 2016 | December 16, 2016 | 18 |
| P-17-0152 | November 28, 2016 | December 6, 2016 | December 16, 2016 | 10 |
| P-17-0157 | November 29, 2016 | December 7, 2016 | December 16, 2016 | 9 |
| P-17-0158 | November 30, 2016 | December 8, 2016 | December 16, 2016 | 8 |
| P-17-0160 | September 13, 2017 | September 21, 2017 | December 4, 2017 | 74 |
| P-17-0161 | September 13, 2017 | September 21, 2017 | December 4, 2017 | 74 |
| P-17-0185 | December 20, 2016 | December 28, 2016 | March 10, 2017 | 72 |
| P-17-0190 | December 26, 2016 | January 3, 2017 | March 10, 2017 | 66 |
| P-17-0191 | June 19, 2017 | June 27, 2017 | September 27, 2017 | 92 |
| P-17-0194 | January 4, 2017 | January 12, 2017 | March 16, 2017 | 63 |
| P-17-0207 | January 23, 2017 | January 31, 2017 | March 16, 2017 | 44 |
| P-17-0214 | January 16, 2017 | January 24, 2017 | March 16, 2017 | 51 |
| P-17-0215 | January 16, 2017 | January 24, 2017 | March 16, 2017 | 51 |
| P-17-0219 | January 27, 2017 | February 6, 2017 | March 16, 2017 | 38 |
| P-17-0220 | January 25, 2017 | February 2, 2017 | March 16, 2017 | 42 |
| P-17-0227 | February 1, 2017 | February 9, 2017 | May 11, 2017 | 91 |
| P-17-0237 | February 23, 2017 | March 3, 2017 | May 11, 2017 | 69 |
| P-17-0238 | February 23, 2017 | March 3, 2017 | May 11, 2017 | 69 |
| P-17-0239 | June 5, 2017 | June 13, 2017 | September 27, 2017 | 106 |
| P-17-0245 | March 2, 2017 | March 10, 2017 | June 6, 2017 | 88 |
| P-17-0245 | February 28, 2017 | March 8, 2017 | June 8, 2017 | 92 |
| P-17-0246 | February 28, 2017 | March 8, 2017 | May 11, 2017 | 64 |
| P-17-0249 | March 3, 2017 | March 13, 2017 | June 8, 2017 | 87 |
| P-17-0255 | March 14, 2017 | March 22, 2017 | June 8, 2017 | 78 |
| P-17-0256 | March 14, 2017 | March 22, 2017 | June 8, 2017 | 78 |
| P-17-0264 | March 22, 2017 | March 30, 2017 | June 8, 2017 | 70 |
| P-17-0266 | March 22, 2017 | March 30, 2017 | June 8, 2017 | 70 |
| P-17-0267 | April 6, 2017 | April 14, 2017 | July 7, 2017 | 84 |
| P-17-0281 | April 21, 2017 | May 1, 2017 | July 7, 2017 | 67 |
| P-17-0282 | June 8, 2017 | June 16, 2017 | September 27, 2017 | 103 |
| P-17-0293 | April 24, 2017 | May 2, 2017 | July 7, 2017 | 66 |
| P-17-0300 | May 4, 2017 | May 12, 2017 | September 6, 2017 | 117 |
| P-17-0320 | July 28, 2017 | August 7, 2017 | September 27, 2017 | 51 |
| P-17-0332 | June 19, 2017 | June 27, 2017 | September 27, 2017 | 92 |
| P-17-0336 | June 27, 2017 | July 5, 2017 | September 27, 2017 | 84 |
| P-17-0337 | June 27, 2017 | July 5, 2017 | September 27, 2017 | 84 |
| P-17-0338 | June 27, 2017 | July 5, 2017 | September 27, 2017 | 84 |
| P-17-0380 | August 24, 2017 | September 1, 2017 | October 23, 2017 | 52 |

| P-17-0381 | August 24, 2017 | September 1, 2017 | October 23, 2017 | 52 |
| P-17-0382 | August 24, 2017 | September 1, 2017 | October 23, 2017 | 52 |
| P-17-0390 | September 6, 2017 | September 14, 2017 | December 4, 2017 | 81 |
| P-17-0400 | October 25, 2017 | November 2, 2017 | January 2, 2018 | 61 |
| P-18-0002 | October 2, 2017 | October 10, 2017 | January 2, 2018 | 84 |
| P-18-0007 | October 4, 2017 | October 12, 2017 | January 2, 2018 | 82 |
| P-18-0008 | October 4, 2017 | October 12, 2017 | January 2, 2018 | 82 |
| P-18-0020 | October 16, 2017 | October 24, 2017 | January 2, 2018 | 70 |
| P-18-0021 | October 17, 2017 | October 25, 2017 | January 2, 2018 | 69 |
| P-18-0024 | December 12, 2017 | December 20, 2017 | May 22, 2018 | 153 |
| P-18-0025 | October 17, 2017 | October 25, 2017 | January 2, 2018 | 69 |
| P-18-0026 | October 23, 2017 | October 31, 2017 | January 2, 2018 | 63 |
| P-18-0030 | October 23, 2017 | October 31, 2017 | January 2, 2018 | 63 |
| P-18-0032 | October 27, 2017 | November 6, 2017 | January 2, 2018 | 57 |
| P-18-0041 | November 6, 2017 | November 14, 2017 | May 22, 2018 | 189 |
| P-18-0042 | November 6, 2017 | November 14, 2017 | May 22, 2018 | 189 |
| P-18-0044 | November 7, 2017 | November 15, 2017 | May 22, 2018 | 188 |
| P-18-0045 | November 7, 2017 | November 15, 2017 | May 22, 2018 | 188 |
| P-18-0048 | November 13, 2017 | November 21, 2017 | May 22, 2018 | 182 |
| P-18-0052 | November 20, 2017 | November 28, 2017 | May 22, 2018 | 175 |
| P-18-0053 | November 20, 2017 | November 28, 2017 | May 22, 2018 | 175 |
| P-18-0054 | November 20, 2017 | November 28, 2017 | May 22, 2018 | 175 |
| P-18-0064 | November 20, 2017 | November 28, 2017 | May 22, 2018 | 175 |
| P-18-0068 | December 13, 2017 | December 21, 2017 | May 22, 2018 | 152 |
| P-18-0070 | January 4, 2018 | January 12, 2018 | May 24, 2018 | 132 |
| P-18-0073 | December 21, 2017 | December 29, 2017 | May 22, 2018 | 144 |
| P-18-0077 | December 27, 2017 | January 4, 2018 | May 22, 2018 | 138 |
| P-18-0078 | December 27, 2017 | January 4, 2018 | May 22, 2018 | 138 |
| P-18-0083 | January 3, 2018 | January 11, 2018 | May 24, 2018 | 133 |
| P-18-0085 | January 8, 2018 | January 16, 2018 | May 24, 2018 | 128 |
| P-18-0100 | January 26, 2018 | February 5, 2018 | May 24, 2018 | 108 |
| P-18-0101 | January 30, 2018 | February 7, 2018 | May 24, 2018 | 106 |
| P-18-0102 | January 26, 2018 | February 5, 2018 | May 24, 2018 | 108 |
| P-18-0106 | February 8, 2018 | February 16, 2018 | June 5, 2018 | 109 |
| P-18-0107 | February 6, 2018 | February 14, 2018 | June 5, 2018 | 111 |
| P-18-0114 | February 19, 2018 | February 27, 2018 | June 5, 2018 | 98 |
| P-18-0116 | February 27, 2018 | March 7, 2018 | June 5, 2018 | 90 |
| P-18-0118 | February 26, 2018 | March 6, 2018 | June 5, 2018 | 91 |
| P-18-0119 | February 26, 2018 | March 6, 2018 | June 5, 2018 | 91 |
| P-18-0122 | March 1, 2018 | March 9, 2018 | June 28, 2018 | 111 |
| P-18-0132 | March 20, 2018 | March 28, 2018 | June 28, 2018 | 92 |

| P-18-0136 | April 9, 2018 | April 17, 2018 | July 23, 2018 | 97 |
| P-18-0137 | March 23, 2018 | April 2, 2018 | June 28, 2018 | 87 |
| P-18-0146 | April 13, 2018 | April 23, 2018 | July 23, 2018 | 91 |
| P-18-0147 | April 4, 2018 | April 12, 2018 | July 23, 2018 | 102 |
| P-18-0150 | April 13, 2018 | April 23, 2018 | July 23, 2018 | 91 |
| P-18-0152 | April 20, 2018 | April 30, 2018 | July 23, 2018 | 84 |
| P-18-0154 | April 25, 2018 | May 3, 2018 | July 23, 2018 | 81 |
| P-18-0157 | April 27, 2018 | May 7, 2018 | July 23, 2018 | 77 |
| P-18-0159 | April 27, 2018 | May 7, 2018 | July 23, 2018 | 77 |
| P-18-0162 | May 8, 2018 | May 16, 2018 | August 14, 2018 | 90 |
| P-18-0169 | May 7, 2018 | May 15, 2018 | August 14, 2018 | 91 |
| P-18-0174 | May 9, 2018 | May 17, 2018 | August 14, 2018 | 89 |
| P-18-0179 | May 16, 2018 | May 24, 2018 | August 14, 2018 | 82 |
| P-18-0180 | May 16, 2018 | May 24, 2018 | August 14, 2018 | 82 |
| P-18-0181 | May 16, 2018 | May 24, 2018 | August 14, 2018 | 82 |
| P-18-0212 | June 14, 2018 | June 22, 2018 | October 12, 2018 | 112 |
| P-18-0219 | June 21, 2018 | June 29, 2018 | October 12, 2018 | 105 |
| P-18-0221 | June 21, 2018 | June 29, 2018 | October 12, 2018 | 105 |
| P-18-0222 | June 22, 2018 | July 2, 2018 | October 12, 2018 | 102 |
| P-18-0224 | June 27, 2018 | July 5, 2018 | October 22, 2018 | 109 |
| P-18-0225 | June 27, 2018 | July 5, 2018 | October 22, 2018 | 109 |
| P-18-0227 | June 29, 2018 | July 9, 2018 | October 12, 2018 | 95 |
| P-18-0229 | August 30, 2018 | September 7, 2018 | March 12, 2019 | 186 |
| P-18-0230 | June 29, 2018 | July 9, 2018 | October 12, 2018 | 95 |
| P-18-0231 | June 29, 2018 | July 9, 2018 | October 12, 2018 | 95 |
| P-18-0233 | July 6, 2018 | July 16, 2018 | October 22, 2018 | 98 |
| P-18-0237 | July 19, 2018 | July 27, 2018 | October 22, 2018 | 87 |
| P-18-0238 | July 16, 2018 | July 24, 2018 | October 22, 2018 | 90 |
| P-18-0261 | July 26, 2018 | August 3, 2018 | October 22, 2018 | 80 |
| P-18-0272 | August 7, 2018 | August 15, 2018 | March 12, 2019 | 209 |
| P-18-0274 | August 21, 2018 | August 29, 2018 | March 12, 2019 | 195 |
| P-18-0275 | August 21, 2018 | August 29, 2018 | March 12, 2019 | 195 |
| P-18-0277 | August 28, 2018 | September 5, 2018 | March 12, 2019 | 188 |
| P-18-0278 | August 16, 2018 | August 24, 2018 | March 12, 2019 | 200 |
| P-18-0279 | August 16, 2018 | August 24, 2018 | March 12, 2019 | 200 |
| P-18-0280 | August 17, 2018 | August 27, 2018 | March 12, 2019 | 197 |
| P-18-0282 | August 24, 2018 | September 3, 2018 | March 12, 2019 | 190 |
| P-18-0284 | August 27, 2018 | September 4, 2018 | March 12, 2019 | 189 |
| P-18-0286 | August 27, 2018 | September 4, 2018 | March 12, 2019 | 189 |
| P-18-0292 | August 29, 2018 | September 6, 2018 | March 12, 2019 | 187 |
| P-18-0307 | September 14, 2018 | September 24, 2018 | March 21, 2019 | 178 |

| | | | |
|---|---|---|---|
| P-18-0319 | September 20, 2018 | September 28, 2018 | March 21, 2019 | 174 |
| P-18-0324 | September 25, 2018 | October 3, 2018 | March 21, 2019 | 169 |
| P-18-0377 | November 16, 2018 | November 26, 2018 | April 10, 2019 | 135 |
| P-18-0379 | September 28, 2018 | October 8, 2018 | March 21, 2019 | 164 |
| P-18-0385 | November 14, 2018 | November 22, 2018 | April 10, 2019 | 139 |
| P-19-0001 | October 1, 2018 | October 9, 2018 | April 4, 2019 | 177 |
| P-19-0002 | October 10, 2018 | October 18, 2018 | April 4, 2019 | 168 |
| P-19-0003 | October 19, 2018 | October 29, 2018 | April 4, 2019 | 157 |
| P-19-0006 | October 9, 2018 | October 17, 2018 | April 4, 2019 | 169 |
| P-19-0007 | October 16, 2018 | October 24, 2018 | April 4, 2019 | 162 |
| P-19-0008 | October 22, 2018 | October 30, 2018 | April 4, 2019 | 156 |
| P-19-0010 | October 29, 2018 | November 6, 2018 | April 4, 2019 | 149 |
| P-19-0012 | November 8, 2018 | November 16, 2018 | April 10, 2019 | 145 |
| P-19-0013 | November 15, 2018 | November 23, 2018 | April 10, 2019 | 138 |
| P-19-0014 | November 5, 2018 | November 13, 2018 | April 10, 2019 | 148 |
| P-19-0015 | November 15, 2018 | November 23, 2018 | April 10, 2019 | 138 |
| P-19-0016 | November 15, 2018 | November 23, 2018 | April 10, 2019 | 138 |
| P-19-0017 | November 15, 2018 | November 23, 2018 | April 10, 2019 | 138 |
| P-19-0018 | November 15, 2018 | November 23, 2018 | April 10, 2019 | 138 |
| P-19-0019 | November 8, 2018 | November 16, 2018 | April 10, 2019 | 145 |
| P-19-0020 | November 8, 2018 | November 16, 2018 | April 10, 2019 | 145 |
| P-19-0021 | November 9, 2018 | November 19, 2018 | April 10, 2019 | 142 |
| P-19-0022 | November 9, 2018 | November 19, 2018 | April 10, 2019 | 142 |
| P-19-0023 | November 16, 2018 | November 26, 2018 | April 10, 2019 | 135 |
| P-19-0025 | November 19, 2018 | November 27, 2018 | April 10, 2019 | 134 |
| P-19-0026 | November 27, 2018 | December 5, 2018 | April 10, 2019 | 126 |
| P-19-0027 | November 28, 2018 | December 6, 2018 | April 10, 2019 | 125 |
| P-19-0035 | December 10, 2018 | December 18, 2018 | April 10, 2019 | 113 |
| P-19-0037 | December 11, 2018 | December 19, 2018 | April 10, 2019 | 112 |
| P-19-0099 | June 18, 2019 | June 26, 2019 | September 5, 2019 | 71 |
| P-19-0111 | July 1, 2019 | July 9, 2019 | September 5, 2019 | 58 |
| P-19-0121 | July 11, 2019 | July 19, 2019 | September 5, 2019 | 48 |
| P-19-0122 | June 28, 2019 | July 8, 2019 | August 12, 2019 | 35 |
| P-19-0123 | June 28, 2019 | July 8, 2019 | September 5, 2019 | 59 |
| P-19-0124 | June 28, 2019 | July 8, 2019 | September 5, 2019 | 59 |
| P-19-0125 | June 28, 2019 | July 8, 2019 | September 5, 2019 | 59 |
| P-19-0126 | June 28, 2019 | July 8, 2019 | September 5, 2019 | 59 |
| P-19-0127 | June 28, 2019 | July 8, 2019 | September 5, 2019 | 59 |
| P-19-0128 | June 28, 2019 | July 8, 2019 | September 5, 2019 | 59 |
| P-19-0129 | June 28, 2019 | July 8, 2019 | September 5, 2019 | 59 |
| P-19-0130 | July 8, 2019 | July 16, 2019 | September 5, 2019 | 51 |

| | | | |
|---|---|---|---|
| P-19-0131 | July 17, 2019 | July 25, 2019 | September 5, 2019 | 42 |
| P-19-0132 | July 15, 2019 | July 23, 2019 | September 5, 2019 | 44 |
| P-19-0133 | July 18, 2019 | July 26, 2019 | September 5, 2019 | 41 |
| P-19-0136 | July 23, 2019 | July 31, 2019 | September 5, 2019 | 36 |
| P-19-0138 | July 25, 2019 | August 2, 2019 | September 5, 2019 | 34 |
| P-19-0139 | July 26, 2019 | August 5, 2019 | September 5, 2019 | 31 |
| P-19-0140 | July 29, 2019 | August 6, 2019 | September 5, 2019 | 30 |
| P-19-0142 | July 31, 2019 | August 8, 2019 | November 7, 2019 | 91 |
| P-19-0143 | August 20, 2019 | August 28, 2019 | November 7, 2019 | 71 |
| P-19-0144 | August 5, 2019 | August 13, 2019 | November 7, 2019 | 86 |
| P-19-0145 | August 15, 2019 | August 23, 2019 | November 7, 2019 | 76 |
| P-19-0146 | August 13, 2019 | August 21, 2019 | November 7, 2019 | 78 |
| P-19-0147 | August 16, 2019 | August 26, 2019 | November 7, 2019 | 73 |

**Table 2: PMNs for which the notice of receipt in the Federal Register did not list or describe test data**

| PMN Case No. | Federal Register Notice failing to list data submitted | Data submitted in public file which should be listed or described in Federal Register notice | Date of Violation (date of publication) |
|---|---|---|---|
| P-14-0314 | 79 Fed. Reg. 55450 | Physical properties, toxicity study, 3 oral toxicity studies, reproduction toxicity, risk analysis, 2 environmental studies | September 16, 2014 |
| P-16-0192 | 81 Fed. Reg. 14106 | Hazard description, water solubility, OECD SIDS package | March 16, 2016 |
| P-16-0302 | 81 Fed. Reg. 35351 | Health and safety study | June 2, 2016 |
| P-16-0303 | 81 Fed. Reg. 35351 | Physical properties, risk analysis, waste stream | June 2, 2016 |
| P-16-0341 | 81 Fed. Reg. 35351 | Biodegradation, 2 toxicity screening, acute toxicity | June 2, 2016 |
| P-16-0345 | 81 Fed. Reg. 35351 | Exposure concerns | June 2, 2016 |

| P-16-0349 | 81 Fed. Reg. 45148 | Physical properties, water solubility, stability in acid, oral toxicity, skin irritation, eye irritation, skin sensitization, ames test, acute immobilization, biodegradation, Sustainable Futures summary | July 12, 2016 |
|---|---|---|---|
| P-16-0366 | 81 Fed. Reg. 45148 | Risk analysis, waste stream | July 12, 2016 |
| P-16-0373 | 81 Fed. Reg. 45148 | Physical properties, toxicology summary, acute oral toxicity, 7-day oral toxicity, 28-day oral toxicity, skin irritation, eye irritation, skin senisitization, mutagenecity, chromosomal aberration, biodegradation, bioconcentration, acute fish toxicity, algal growth | July 12, 2016 |
| P-16-0380-385 | 81 Fed. Reg. 45148 | Hazard information, Sustainable Futures summary | July 12, 2016 |
| p-16-0392 | 81 Fed. Reg. 45148 | Sustainable Futures summary | July 12, 2016 |
| P-16-0400 | 81 Fed. Reg. 49976 | Environmental hazard review, human hazard assessment, Sustainable Futures summary | July 29, 2016 |
| P-16-0401 | 81 Fed. Reg. 74784 | Physical properties | October 27, 2016 |
| P-16-0403 | 81 Fed. Reg. 49976 | Risk analysis | July 29, 2016 |
| P-16-0426 | 81 Fed. Reg. 74784 | Physical properties, Sustainable Futures summary, acute dermal lethality, eye irritation, dermal irritation, 28-day repeat dose study | October 27, 2016 |
| P-16-0466 | 81 Fed. Reg. 57903 | Pollution prevention | August 24, 2016 |

| P-16-0483 | 81 Fed. Reg. 57903 | Melting point, explosive properties, oxidizing properties, flammability, self-ignition, octanol/water coefficient, water solubility, skin irritation, algae toxicity, fish toxicity, biodegrdation, acute oral toxicity, daphnia toxicity, reverse mutation, 2 oral toxicity, skin sensitization, eye irritation, chromosomal aberration | August 24, 2016 |
| --- | --- | --- | --- |
| P-16-0509 | 81 Fed. Reg. 79013 | Mutagenicity, melting point, density, pollution prevention | November 10, 2016 |
| P-16-0518-519 | 81 Fed. Reg. 45148 | Acute dermal, acute eye irritation, acute oral toxicity, algae growth, ames test, chicken eye test | November 10, 2016 |
| P-16-0532 | 81 Fed. Reg. 79013 | Human health safety assessment, environmental safety assessment, repeated dose oral toxicity | November 10, 2016 |
| P-16-0538 | 81 Fed. Reg. 79013 | Toxic potential, biodegradabiltiy, acute oral toxicity, skin irritaiton, mutagneic potential | November 10, 2016 |
| P-16-0575 | 81 Fed. Reg. 79020 | Risk assessment | November 10, 2016 |
| P-16-0578 | 81 Fed. Reg. 85556 | Physical properties, EFAST, oncologic, Sustainable Futures summary | November 28, 2016 |
| P-16-0581 | 81 Fed. Reg. 79020 | Risk assessment, biodegrdation, worker exposures | November 10, 2016 |
| P-17-0115 | 81 Fed. Reg. 91162 | Toxicology summary | December 16, 2016 |
| P-17-0117-118 | 81 Fed. Reg. 91162 | 2 ChemSTEERs, EPISuite, ECOSAR, Oncologic, Tox-fate | December 16, 2016 |
| P-17-0121 | 81 Fed. Reg. 91162 | Toxicology evaluation | December 16, 2016 |

| P-17-0152 | 81 Fed. Reg. 91162 | 3 acute ecotoxicity, biodegradation, sustainable Futures summary, ChemSTEER report, 9 EFAST reports, Oncologic | December 16, 2016 |
|---|---|---|---|
| P-17-0157 | 81 Fed. Reg. 91162 | Risk analaysis | December 16, 2016 |
| P-17-0160-161 | 82 Fed. Reg. 42088 | Oncologic, Sustainable Futures summary, ChemSTEER, EFAST | December 4, 2017 |
| P-17-0182 | Not in Federal Register | Risk analysis | Unknown |
| P-17-0185 | 82 Fed. Reg. 13339 | Pollution prevention | March 10, 2017 |
| P-17-0190 | 82 Fed. Reg. 13339 | ChemSTEER, EFAST, oncologic, Sustianable Futures summary | March 10, 2017 |
| P-17-0194 | 82 Fed. Reg. 13992 | Biodegradation, toxicity to worms, toxicity to fish, mutagenicity | March 16, 2017 |
| P-17-0219 | 82 Fed. Reg. 13992 | 2 toxicity studies | March 16, 2017 |
| P-17-0227 | 82 Fed. Reg. 21996 | Pollution prevention | May 11, 2017 |
| P-17-0237-238 | 81 Fed. Reg. 85556 | EPISuite | May 11, 2017 |
| P-17-0249 | 82 Fed. Reg. 26681 | Acute toxicity, humic acid, water extractability | June 8, 2017 |
| P-17-0256 | 82 Fed. Reg. 26681 | Algal growth test, acute toxicity to fish, acute immobility to daphnia | June 8, 2017 |
| P-17-0266 | 82 Fed. Reg. 26681 | Physical properties, algae growth, fish toxicity, respiration inhibition, fish toxicity, 2 daphnia immobilization, 2 biodegradation, 2 repeat dose toxicity, developmental toxicity, acute oral toxicity, ames test, eye irritation, sensitization, acute dermal irritation | June 8, 2017 |

| P-17-0267 | 82 Fed. Reg. 31598 | 13 week Inhalation toxicity study, 14 day inhalation toxicity in rats, 1H NMR, 28 day Inhalation Toxicity Study, 28-day oral toxicity study, Acute Cardiac Sensitization Study, Acute inhalation Toxcity in Rats, Acute Toxity of Daphnia Manga, Algae growth inhibition test, Ames test, An acute study, Approximate Lethal Concentration (ALC), Inhalation Screening, Bacterial Reverse Mutation Assay, Biodegradation test, Chromosone aberration study, Fish Acute Toxicity, Flammability summary, IRER report, Log Kow, MIR, Repeat dose toxicity, Solubility test results, Spectral data, Toxicity Data Summary and NOAEC justification, Vapor pressure data | July 7, 2017 |
| --- | --- | --- | --- |
| P-17-0281 | 82 Fed. Reg. 31598 | Physical properties | July 7, 2017 |
| P-17-0300 | 82 Fed. Reg. 42088 | Biodegradability,  48h Acute Tox Daphnia Magna, Activated Sludge Respiration Inhibition, Oral Toxicity Rat, Dermal Irritation, Eye Irritation | September 6, 2017 |
| P-17-0336 | 82 Fed. Reg. 45015 | Dermal irritation, acute oral toxicity, air monitoring, air monitoring summary, 2 acute inhalation, 2 dermal irritation | September 27, 2017 |
| P-17-0380-381 | 82 Fed. Reg. 49016 | Octanol-water coefficient, risk analysis, acute oral toxicity, humic acid, water extractability | October 23, 2017 |

| P-17-0382 | 82 Fed. Reg. 49016 | 28-day oral toxicity, acute dermal toxicity, eye irritation, oral toxicity, acute toxicity to earthworm, acute toxicity to fish, algae growth, ames test, skin sensitization, biodegrdation, chromosomal aberration, acute daphnia toxicity, acute fish toxicity, mouse lymphoma, skin corrosion, skin irritation, inhibition of respiration, physical properties, reproductive screening in rats, skin irritation | October 23, 2017 |
| --- | --- | --- | --- |
| P-17-0390 | 82 Fed. Reg. 57253 | Ames test, eye irritation, skin irritation, skin sensitization, bioconcentration | December 4, 2017 |
| P-17-0400 | 83 Fed. Reg. 116 | GPC report, Mutagenicity Test by using microorganisms | January 2, 2018 |
| P-18-0002 | 83 Fed. Reg. 116 | Boiling point, relatice density, partition, water solubility, surface tension, auto-ignition, thermal stability, 4 biodegradation, 3 acute toxicity daphnia, 2 algae, acute oral toxicity, skin irritation, eye irritation, mammalian micronucleus test, reverse mutation, oral toxicity, maximization test | January 2, 2018 |
| P-18-0007-8 | 82 Fed. Reg. 45015 | 2 ECOSARs | January 2, 2018 |
| P-18-0025 | 83 Fed. Reg. 116 | Physical properties, acute oral toxicity, algae growth, biodegradability, daphnia acute toxicity, mutagenic activity, acute toxicity to earthworm, acute toxicity to fish, biodegradation, engineering report | January 2, 2018 |

| P-18-0026 | 83 Fed. Reg. 116 | Oral toxicity, skin sensitization | January 2, 2018 |
|---|---|---|---|
| P-18-0045 | 83 Fed. Reg. 23671 | Density, flashpoint, saponification, pour point, viscosity, method for water, water solubility | May 22, 2018 |
| P-18-0052 | 83 Fed. Reg. 23671 | Ames test | May 22, 2018 |
| P-18-0053 | 83 Fed. Reg. 23671 | Ames test | May 22, 2018 |
| P-18-0064 | 83 Fed. Reg. 23671 | Combined Repeated Dose Toxicity Study, Density and vapor pressure | May 22, 2018 |
| P-18-0068 | 83 Fed. Reg. 23666 | Inhalation exposure | May 22, 2018 |
| P-18-0077 | 84 Fed. Reg. 23666 | Acute oral toxicity, 28-day repeat study, read across, hydrolysis study, octanol/water coefficient, water solubility, density, vapour pressure, accelerated stability, final stability, ECOSAR, KIOWIN, EPISuite, ChemSTEER, environmental, aquatic toxicity, uterine effects | May 22, 2018 |
| P-18-0083 | 83 Fed. Reg. 24110 | Water solubility, 4 algae growth, 2 acute toxicity in fish, 3 acute immobilization, 2 biodegradation, 2 algae growth inhibition, environmental safety, Sustianable Futures summary, human safety assessment, partition coefficient | May 24, 2018 |
| P-18-0106 | 83 Fed. Reg. 26052 | Combined Repeated Dose Toxicity Study, Density and vapor pressure | June 5, 2018 |
| P-18-0107 | 83 Fed. Reg. 26052 | Data report | June 5, 2018 |
| P-18-0132 | 83 Fed. Reg. 30438 | EPISuite, ECOSAR, toxicity data, ames test, environmental release, worker exposure, health assessment, air sampling, point of departure | June 28, 2018 |

| P-18-0136 | 83 Fed. Reg. 34843 | Acute daphnia toxicity, acute dermal toxicity, eye irritancy, skin irritation, acute fish toxicity, acute oral toxicity, algal growth inhibition, biodegradability, in vivo mouse, mutagenicity, skin sensitization | July 23, 2018 |
|---|---|---|---|
| P-18-0137 | 83 Fed. Reg. 30438 | human health assessment, acute oral toxicity, acute dermal toxicity, 4 28-day oral toxicity studies, acure dermal, acute eye irritation, reverse mutation, chromosomal aberration, 2 mammalian chromosome tests, mammalian micronucleus, sensitization, 3 prenatla developmental toxicity, acute fish toxicity, acute daphnia toxicity, algae growth, biodegradability, activated sludge | June 28, 2018 |
| P-18-0150 | 83 Fed. Reg. 34843 | Acure Inhalation Toxicity , AMES test,  Local Lymph Node Assay , Acute Oral Toxicity, Bovine Corneal Opacity and Permeability test, HET-CAM, In vitro Eye Irritation, In vitro Skin Irritation, In vitro Skin Corrosion, Algae Growth Inhibition test, Daphnia Immobilization test, Ready Biodegradation, Activated sludge test | July 23, 2018 |

| P-18-0152 | 83 Fed. Reg. 34843 | Risk assessment, 5 EPISuite reports, 4 data summaries, analog hazard data, QSAR, 2 acute dermal, eye irritation, acute oral, reverse mutation, ASRIT, acute trout, Sustainable Futures summary, chronic daphnia, skin corrosion, reverse mutation, eye irritation, skin irritation, acute dermal, acute oral, acute inhalation, 3 unnamed studies, 3 CHEMSTEER, ECETOC, GENEEC | July 23, 2018 |
|---|---|---|---|
| P-18-0154 | 83 Fed. Reg. 34843 | NCO titration method, NCO titration | July 23, 2018 |
| P-18-0157 | 83 Fed. Reg. 34843 | Spectra | July 23, 2018 |
| P-18-0159 | 83 Fed. Reg. 34843 | Spectra | July 23, 2018 |
| P-18-0219 | 83 Fed. Reg. 51680 | Occupational exposure, worker exposure | October 12, 2018 |
| P-18-0227 | 83 Fed. Reg. 51680 | EPISuite | October 12, 2018 |
| P-18-0230 | 83 Fed. Reg. 51680 | Vapour pressue, water solubility, partitian coefficient, flammability, biodegrdation, acute immobilization, algae growth, acute oral toxicity, skin irritation, eye irritation, ames test | October 12, 2018 |
| P-18-0233 | 83 Fed. Reg. 53241 | Water solubility, Sustainable Futures summary | October 22, 2018 |
| P-18-0274 | 84 Fed. Reg. 8860 | Acute Oral Toxicity, ADME Study, Bacterial reverse mutation assay, In Vitro Eye Irritation, In Vitro Skin Irritation, Incinerator Information, Skin Sensitization | March 12, 2019 |
| P-18-0275 | 84 Fed. Reg. 8860 | Incinerator information | March 12, 2019 |
| P-18-0280 | 84 Fed. Reg. 8860 | Acute Daphnia, Acute Oral, Hypersensitivity Test, In Vitro Skin | March 12, 2019 |

| P-18-0286 | 84 Fed. Reg. 8860 | Acute Dermal Toxicity, Acute Inhalation Toxicity, Acute Oral Toxicity, Dermal Sensitization Study, Exposure Information, Eye Irritation Study, Skin Irritation Study | March 12, 2019 |
|---|---|---|---|
| P-18-0307 | 84 Fed. Reg. 10499 | Physical properties, acid base stability, acute oral toxicity, reverse mutation, Sustainable Futures summary, EFAST, ChemSTEER, water solubility | March 21, 2019 |
| P-18-0319 | 84 Fed. Reg. 10499 | Toxicology and ecotoxicology assessment, 7 EPISuite reports | March 21, 2019 |
| P-18-0324 | 84 Fed. Reg. 10499 | Risk assessment, surface tension | March 21, 2019 |
| P-18-0377 | 84 Fed. Reg. 14360 | Water solubility, octanol/water coefficient | April 10, 2019 |
| P-18-0385 | 84 Fed. Reg. 14360 | Biodegrdation, algae report, daphnia report | April 10, 2019 |
| P-19-0006 | 84 Fed. Reg. 13287 | Risk analysis | April 4, 2019 |
| P-19-0013 | 84 Fed. Reg. 14360 | 2 worker exposure, 1 environmental release | April 10, 2019 |
| P-19-0014 | 84 Fed. Reg. 14360 | 2 worker exposure, 1 environmental release | April 10, 2019 |
| P-19-0015 | 84 Fed. Reg. 14360 | 2 worker exposure, 1 environmental release | April 10, 2019 |
| P-19-0016 | 84 Fed. Reg. 14360 | 2 worker exposure, 1 environmental release | April 10, 2019 |
| P-19-0017 | 84 Fed. Reg. 14360 | 2 worker exposure, 1 environmental release | April 10, 2019 |
| P-19-0018 | 84 Fed. Reg. 14360 | Worker exposure, environmental release | April 10, 2019 |
| P-19-0019 | 84 Fed. Reg. 14360 | Toxicology summary | April 10, 2019 |

| P-19-0020 | 84 Fed. Reg. 14360 | LogKow, water solubility, vapor pressue, autoignition, Sustainable Futures summary, read across, acute algae, acute daphnia, acute fish, ready biodegrdation, acute oral, acute dermal, skin irritation, 2 skin sensitization, 28-day repeat oral toxicity, gene repro, microsome reverse mutation, chromosomal aberration, micronucleus test | April 10, 2019 |

**Table 3: Applications for Test Marketing Exemptions where EPA failed to timely publish notice of receipt in the Federal Register[3]**

| Test Marketing Exemption Case No. | Date of application receipt | Date that Receipt was Published in Federal Register | Date of Final EPA Determination which are never published in Federal Register |
|---|---|---|---|
| T-17-0002 | November 17, 2016 | None Yet | January 17, 2017 |
| T-17-0003 | April 5, 2017 | July 7, 2017 | May 19, 2017 |
| T-17-0004 | April 5, 2017 | July 7, 2017 | May 19, 2017 |
| T-17-0005 | April 5, 2017 | July 7, 2017 | May 19, 2017 |
| T-17-0006 | April 5, 2017 | July 7, 2017 | May 19, 2017 |
| T-17-0007 | April 5, 2017 | July 7, 2017 | May 19, 2017 |
| T-17-0008 | April 5, 2017 | July 7, 2017 | May 19, 2017 |
| T-17-0009 | April 13, 2017 | July 7, 2017 | May 27, 2017 |
| T-17-0010 | April 13, 2017 | July 7, 2017 | May 27, 2017 |
| T-17-0011 | April 13, 2017 | July 7, 2017 | May 27, 2017 |
| T-17-0012 | April 19, 2017 | July 7, 2017 | June 2, 2017 |
| T-17-0013 | April 19, 2017 | July 7, 2017 | June 2, 2017 |
| T-18-0001 | November 16, 2017 | May 22, 2018 (83 Fed. Reg. 23,671) | February 1, 2018 |

[3] Information about Test Marketing Exemption Applications, including Case Numbers, Date of Application Receipt, and the Date of EPA's Final Determination can be found at: https://www.epa.gov/reviewing-new-chemicals-under-toxic-substances-control-act-tsca/exemptions-table.

| T-18-0002 | January 30, 2018 | May 24, 2018 (83 Fed. Reg. 24,110) | May 5, 2018 |
| T-18-0003A | July 16, 2018 | October 22, 2018 (83 Fed. Reg. 53,241) | September 6, 2018 |
| T-19-0001 | October 17, 2018 | None yet | Unknown |

**Table 4: PMN Public Files Received and Analyzed by the Listed Parties (through April 2019)**

| PMN Case No. | Date on which Public File was made available to Plaintiffs |
|---|---|
| P-14-0314 | December 26, 2017 |
| P-15-0726 | July 30, 2018 |
| P-16-0192 | October 10, 2018 |
| P-16-0281 | December 26, 2017 |
| P-16-0292 | December 26, 2017 |
| P-16-0301 | December 26, 2017 |
| P-16-0302 | December 26, 2017 |
| P-16-0303 | December 26, 2017 |
| P-16-0340 | December 26, 2017 |
| P-16-0341 | June 21, 2018 |
| P-16-0343 | December 26, 2017 |
| P-16-0344 | December 26, 2017 |
| P-16-0345 | June 21, 2018 |
| P-16-0348 | December 26, 2017 |
| P-16-0349 | June 21, 2018 |
| P-16-0351 | December 26, 2017 |
| P-16-0354 | June 21, 2018 |
| P-16-0355 | June 21, 2018 |
| P-16-0366 | December 26, 2017 |
| P-16-0373 | December 26, 2017 |
| P-16-0380 | October 10, 2018 |
| P-16-0381 | October 10, 2018 |
| P-16-0382 | October 10, 2018 |
| P-16-0383 | October 10, 2018 |
| P-16-0384 | October 10, 2018 |
| P-16-0385 | October 10, 2018 |
| P-16-0391 | December 26, 2017 |
| P-16-0392 | December 26, 2017 |

| P-16-0400 | March 28, 2019 |
|---|---|
| P-16-0401 | December 26, 2017 |
| P-16-0403 | December 26, 2017 |
| P-16-0415 | April 24, 2018 |
| P-16-0426 | December 26, 2017 |
| P-16-0459 | December 26, 2017 |
| P-16-0466 | December 26, 2017 |
| P-16-0483 | October 10, 2018 |
| P-16-0484 | October 10, 2018 |
| P-16-0492 | December 26, 2017 |
| P-16-0508 | December 26, 2017 |
| P-16-0509 | June 21, 2018 |
| P-16-0510 | June 21, 2018 |
| P-16-0512 | June 21, 2018 |
| P-16-0515 | December 26, 2017 |
| P-16-0518 | December 26, 2017 |
| P-16-0519 | December 26, 2017 |
| P-16-0532 | June 21, 2018 |
| P-16-0538 | June 21, 2018 |
| P-16-0545 | December 26, 2017 |
| P-16-0575 | October 10, 2018 |
| P-16-0578 | December 26, 2017 |
| P-16-0580 | December 26, 2017 |
| P-16-0581 | October 10, 2018 |
| P-16-0587 | December 26, 2017 |
| P-16-0588 | December 26, 2017 |
| P-16-0592 | December 26, 2017 |
| P-17-0008 | December 26, 2017 |
| P-17-0009 | December 26, 2017 |
| P-17-0014 | December 26, 2017 |
| P-17-0016 | December 26, 2017 |
| P-17-0017 | December 26, 2017 |
| P-17-0018 | December 26, 2017 |
| P-17-0019 | December 26, 2017 |
| P-17-0020 | December 26, 2017 |
| P-17-0021 | December 26, 2017 |
| P-17-0024 | December 26, 2017 |
| P-17-0025 | December 26, 2017 |
| P-17-0112 | December 26, 2017 |
| P-17-0115 | June 21, 2018 |
| P-17-0117 | December 26, 2017 |

| P-17-0118 | December 26, 2017 |
| P-17-0119 | June 21, 2018 |
| P-17-0121 | June 21, 2018 |
| P-17-0144 | December 26, 2017 |
| P-17-0152 | June 21, 2018 |
| P-17-0157 | June 21, 2018 |
| P-17-0158 | December 26, 2017 |
| P-17-0160 | December 26, 2017 |
| P-17-0161 | December 26, 2017 |
| P-17-0182 | December 26, 2017 |
| P-17-0185 | December 26, 2017 |
| P-17-0190 | December 26, 2017 |
| P-17-0194 | December 26, 2017 |
| P-17-0207 | December 26, 2017 |
| P-17-0214 | December 26, 2017 |
| P-17-0215 | December 26, 2017 |
| P-17-0219 | December 26, 2017 |
| P-17-0227 | December 26, 2017 |
| P-17-0237 | December 26, 2017 |
| P-17-0238 | December 26, 2017 |
| P-17-0245 | April 26, 2019 |
| P-17-0246 | December 26, 2017 |
| P-17-0249 | July 30, 2018 |
| P-17-0255 | December 26, 2017 |
| P-17-0256 | December 26, 2017 |
| P-17-0264 | December 26, 2017 |
| P-17-0266 | December 26, 2017 |
| P-17-0267 | April 26, 2019 |
| P-17-0281 | March 1, 2019 |
| P-17-0282 | April 26, 2019 |
| P-17-0293 | December 26, 2017 |
| P-17-0300 | April 26, 2019 |
| P-17-0320 | April 26, 2019 |
| P-17-0332 | October 2, 2018 |
| P-17-0336 | July 30, 2018 |
| P-17-0337 | July 30, 2018 |
| P-17-0338 | July 30, 2018 |
| P-17-0380 | July 30, 2018 |
| P-17-0381 | July 30, 2018 |
| P-17-0382 | December 6, 2018 |
| P-17-0390 | December 26, 2017 |

| P-17-0400 | April 26, 2019 |
|-----------|----------------|
| P-18-0002 | April 24, 2018 |
| P-18-0007 | March 1, 2019 |
| P-18-0008 | March 1, 2019 |
| P-18-0020 | March 28, 2019 |
| P-18-0021 | April 24, 2018 |
| P-18-0024 | November 20, 2018 |
| P-18-0025 | November 20, 2018 |
| P-18-0026 | January 2, 2018 |
| P-18-0030 | November 20, 2018 |
| P-18-0032 | January 2, 2018 |
| P-18-0041 | November 8, 2018 |
| P-18-0042 | April 26, 2019 |
| P-18-0044 | April 24, 2018 |
| P-18-0045 | April 24, 2018 |
| P-18-0052 | April 26, 2019 |
| P-18-0053 | April 26, 2019 |
| P-18-0054 | October 10, 2018 |
| P-18-0064 | April 26, 2019 |
| P-18-0068 | March 1, 2019 |
| P-18-0070 | October 10, 2018 |
| P-18-0077 | April 15, 2019 |
| P-18-0078 | December 6, 2018 |
| P-18-0083 | April 24, 2018 |
| P-18-0100 | October 10, 2018 |
| P-18-0102 | October 10, 2018 |
| P-18-0106 | April 26, 2019 |
| P-18-0107 | April 15, 2019 |
| P-18-0114 | April 26, 2019 |
| P-18-0116 | October 10, 2018 |
| P-18-0118 | April 15, 2019 |
| P-18-0119 | April 15, 2019 |
| P-18-0132 | April 15, 2019 |
| P-18-0136 | December 6, 2018 |
| P-18-0137 | September 19, 2018 |
| P-18-0146 | April 26, 2019 |
| P-18-0147 | March 28, 2019 |
| P-18-0150 | April 26, 2019 |
| P-18-0152 | March 28, 2019 |
| P-18-0154 | April 26, 2019 |
| P-18-0157 | April 26, 2019 |

| | |
|---|---|
| P-18-0159 | April 26, 2019 |
| P-18-0169 | April 15, 2019 |
| P-18-0212 | March 1, 2019 |
| P-18-0219 | March 1, 2019 |
| P-18-0221 | March 28, 2019 |
| P-18-0224 | December 5, 2018 |
| P-18-0225 | December 5, 2018 |
| P-18-0227 | October 10, 2018 |
| P-18-0230 | October 2, 2018 |
| P-18-0231 | October 10, 2018 |
| P-18-0233 | November 20, 2018 |
| P-18-0237 | April 26, 2019 |
| P-18-0238 | March 28, 2019 |
| P-18-0261 | December 6, 2018 |
| P-18-0272 | April 15, 2019 |
| P-18-0274 | April 26, 2019 |
| P-18-0275 | April 26, 2019 |
| P-18-0277 | April 15, 2019 |
| P-18-0278 | April 22, 2019 |
| P-18-0279 | December 6, 2018 |
| P-18-0280 | April 26, 2019 |
| P-18-0282 | April 26, 2019 |
| P-18-0284 | April 22, 2019 |
| P-18-0286 | April 26, 2019 |
| P-18-0292 | April 26, 2019 |
| P-18-0307 | April 22, 2019 |
| P-18-0319 | February 28, 2019 |
| P-18-0324 | March 28, 2019 |
| P-18-0377 | February 28, 2019 |
| P-18-0379 | April 15, 2019 |
| P-18-0385 | February 28, 2019 |
| P-19-0001 | February 28, 2019 |
| P-19-0002 | April 15, 2019 |
| P-19-0006 | March 28, 2019 |
| P-19-0007 | April 15, 2019 |
| P-19-0008 | March 28, 2019 |
| P-19-0012 | February 28, 2019 |
| P-19-0013 | February 28, 2019 |
| P-19-0014 | February 28, 2019 |
| P-19-0015 | February 28, 2019 |
| P-19-0016 | February 28, 2019 |

| P-19-0017 | February 28, 2019 |
| P-19-0018 | February 28, 2019 |
| P-19-0019 | February 28, 2019 |
| P-19-0020 | February 28, 2019 |
| P-19-0021 | February 28, 2019 |
| P-19-0022 | February 28, 2019 |
| P-19-0023 | February 28, 2019 |
| P-19-0025 | February 28, 2019 |
| P-19-0025 | April 15, 2019 |
| P-19-0026 | February 28, 2019 |
| P-19-0026 | April 22, 2019 |
| P-19-0027 | February 28, 2019 |

**Table 5: PMN Public Files with Redacted/Missing Health and Safety Studies**

| PMN Case No. | Health and safety studies that should appear in public files but are either not provided or excessively redacted | Date of Violation (Public file receipt date) |
|---|---|---|
| P-14-0314 | Physical properties, toxicity study, 3 oral toxicity studies, reproduction toxicity, risk analysis, 2 environmental studies | December 26, 2017 |
| P-16-0192 | Summary hazard description | October 10, 2018 |
| P-16-0302 | Health study | December 26, 2017 |
| P-16-0303 | Physical properties | December 26, 2017 |
| P-16-0345 | Exposure concerns | June 21, 2018 |
| P-16-0349 | Physical properties, water solubility, stability in acid, oral toxicity, skin irritation, eye irritation, skin sensitization, ames test, acute immobilization test, biodegradation, Sustainable Futures summary | June 21, 2018 |
| P-16-0366 | Waste stream | December 26, 2017 |
| P-16-0373 | Physical properties, toxicology summary, acute oral toxicity, 7-day oral toxicity, 28-day oral toxicity, skin irritation, eye irritation, skin sensitization, mutagenecity, chromosomal aberration, biodegradation, bioconcentration, acute fish toxicity, algal growth | December 26, 2017 |

| P-16-0392 | Sustainable Futures summary | December 26, 2017 |
|---|---|---|
| P-16-0401 | Physical properties | December 26, 2017 |
| P-16-0466 | Pollution prevention | December 26, 2017 |
| P-16-0483 | Water solubility, melting point, explosive properties, oxidizing properties, flammability, self-igntion, octanol/water partition, water solubility, oral toxicity | October 10, 2018 |
| P-16-0509 | Mutagenicity, density, pollution prevention | June 21, 2018 |
| P-16-0518-519 | Acute dermal, acute eye, acute oral toxicity, algae, ames test, chicken eye test | December 26, 2017 |
| P-16-0575 | Risk assessment | October 10, 2018 |
| P-16-0578 | Physical properties | December 26, 2017 |
| P-16-0581 | Worker exposures, 2 response letters with redacted tables | October 10, 2018 |
| P-17-0121 | Toxicology evaluation | June 21, 2018 |
| P-17-0152 | Sustainable Futures summary, ChemSTEER report, 9 EFAST reports, Oncologic | June 21, 2018 |
| P-17-0160-161 | Oncologic | December 26, 2017 |
| P-17-0185 | Pollution prevention | December 26, 2017 |
| P-17-0194 | Biodegradation, toxicity to worms, toxicity to fish, mutagenecity | December 26, 2017 |
| P-17-0227 | Pollution prevention | December 26, 2017 |
| P-17-0245 | Gel Permeation Chromatofraphy | April 26, 2019 |
| P-17-0267 | 1H NMR, 28-day oral toxicity study, Ames test, An acute study, IRER report, Log Kow, Toxicity Data Summary and NOAEC justification, Vapor pressure data | April 26, 2019 |
| P-17-0281 | Physical properties | March 1, 2019 |
| P-17-0336-338 | Air monitoring summary | July 30, 2018 |
| P-17-0400 | Mutagenicity Test by using microorganisms | April 26, 2019 |
| P-18-0025 | Physical properties, engineering report | November 20, 2018 |

| P-18-0045 | Density, flashpoint, saponification, pour point, viscosity, method for water, water solubility | April 24, 2018 |
|---|---|---|
| P-18-0064 | Density and vapor pressure,  Detail of NMR results,  NMR Results | April 26, 2019 |
| P-18-0068 | Inhalation exposure | March 1, 2019 |
| P-18-0106 | Information on incinerator performance, NMR Summary | April 26, 2019 |
| P-18-0132 | EPISuite, ECOSAR, toxicity data, ames test, environmental release, worker exposure, health assessment, air sampling, point of departure | April 15, 2019 |
| P-18-0136 | Acute daphnia toxicity | December 6, 2018 |
| P-18-0150 | Acute Inhalation Toxicity , AMES test,  Local Lymph Node Assay , Acute Oral Toxicity, Bovine Corneal Opacity and Permeability test, HET-CAM, In vitro Eye Irritation, In vitro Skin Irritation, In vitro Skin Corrosion, Algae Growth Inhibition test, Daphnia Immobilization test, Ready Biodegradation, Activated sludge test | April 26, 2019 |
| P-18-0152 | Risk assessment, analog hazard data, QSAR, 3 unnamed studies, ChemSTEER, GENEEC | March 28, 2019 |
| P-18-0219 | Occupational exposure, worker exposure | March 1, 2019 |
| P-18-0227 | EPISuite | October 10, 2018 |
| P-18-0233 | Sustainable Futures summary, water solubility | November 20, 2018 |
| P-18-0274 | Incinerator Information, NMR, PhysChem Properties, Acute Oral Toxicity, ADME Study, Bacterial reverse mutation assay, Skin Sensitization | April 26, 2019 |
| P-18-0275 | Incinerator information, NMR, PhysChem Properties | April 26, 2019 |
| P-18-0282 | Residual MDI and worker exposure | April 26, 2019 |
| P-18-0292 | Gel Permeation Chromatofraphy | April 26, 2019 |

| P-18-0307 | Physical properties, acid base stability report, acute oral toxicity, Sustainable Futures summary, EFAST summary, ChemSTEER, water solubility | April 22, 2019 |
| P-18-0319 | Toxicology and ecotoxicology assessment, 7 EPISuite reports | February 28, 2019 |
| P-18-0377 | Water solubility, octanol/water partition coefficient | February 28, 2019 |
| P-19-0013 | Worker exposures | February 28, 2019 |
| P-19-0014 | Worker exposures | February 28, 2019 |
| P-19-0015 | Worker exposures | February 28, 2019 |
| P-19-0016 | Worker exposures | February 28, 2019 |
| P-19-0017 | Worker exposures | February 28, 2019 |
| P-19-0018 | Worker exposures | February 28, 2019 |

**Table 6: PMN Public Files with Redacted/Missing Safety Data Sheets**

| PMN Case No. | Date of Violation (Public file receipt date) |
| --- | --- |
| P-14-0314 | December 26, 2017 |
| P-15-0726 | July 30, 2018 |
| P-16-0281 | December 26, 2017 |
| P-16-0301 | December 26, 2017 |
| P-16-0302 | December 26, 2017 |
| P-16-0303 | December 26, 2017 |
| P-16-0349 | June 21, 2018 |
| P-16-0354-355 | June 21, 2018 |
| P-16-0373 | December 26, 2017 |
| P-16-0401 | December 26, 2017 |
| P-16-0415 | April 24, 2018 |
| P-16-0518-519 | December 26, 2017 |
| P-17-0016-21 | December 26, 2017 |
| P-17-0144 | December 26, 2017 |
| P-17-0245 | April 26, 2019 |
| P-17-0246 | December 26, 2017 |
| P-17-0267 | April 26, 2019 |
| P-17-0281 | March 1, 2019 |
| P-17-0400 | April 26, 2019 |
| P-18-0024 | November 20, 2018 |
| P-18-0030 | November 20, 2018 |

| P-18-0044 | April 24, 2018 |
| P-18-0045 | April 24, 2018 |
| P-18-0064 | April 26, 2019 |
| P-18-0106 | April 26, 2019 |
| P-18-0114 | April 26, 2019 |
| P-18-0146 | April 26, 2019 |
| P-18-0150 | April 26, 2019 |
| P-18-0152 | March 28, 2019 |
| P-18-0154 | April 26, 2019 |
| P-18-0169 | April 15, 2019 |
| P-18-0219 | March 1, 2019 |
| P-18-0221 | March 28, 2019 |
| P-18-0233 | November 20, 2018 |
| P-18-0272 | April 15, 2019 |
| P-18-0274 | April 26, 2019 |
| P-18-0275 | April 26, 2019 |
| P-18-0280 | April 26, 2019 |
| P-18-0282 | April 26, 2019 |
| P-18-0284 | April 22, 2019 |
| P-18-0292 | April 26, 2019 |
| P-18-0307 | April 22, 2019 |
| P-18-0319 | February 28, 2019 |
| P-19-0002 | April 15, 2019 |
| P-19-0012 | February 28, 2019 |
| P-19-0013 | February 28, 2019 |
| P-19-0014 | February 28, 2019 |
| P-19-0015 | February 28, 2019 |
| P-19-0016 | February 28, 2019 |
| P-19-0017 | February 28, 2019 |
| P-19-0018 | February 28, 2019 |

**Table 7: PMNs with public files containing fewer versions of the PMN than appear to have been submitted**

| PMN Case No. | Date of Violation (Public file receipt date)[4] |
| --- | --- |
| P-14-0314 | December 26, 2017 |
| P-15-0726 | July 30, 2018 |

---

[4] The date of violation is no later than the date on which EPA responded to the public file request by making the public file available to the requestor.

| P-16-0281 | December 26, 2017 |
|---|---|
| P-16-0303 | December 26, 2017 |
| P-16-0345 | June 21, 2018 |
| P-16-0380-385 | October 10, 2018 |
| P-16-0426 | December 26, 2017 |
| P-16-0459 | December 26, 2017 |
| P-16-0466 | December 26, 2017 |
| P-16-0483 | October 10, 2018 |
| P-16-0484 | October 10, 2018 |
| P-16-0492 | December 26, 2017 |
| P-16-0509 | June 21, 2018 |
| P-16-0512 | June 21, 2018 |
| p-16-0515 | December 26, 2017 |
| P-16-0538 | June 21, 2018 |
| P-16-0545 | December 26, 2017 |
| P-16-0575 | October 10, 2018 |
| P-16-0578 | December 26, 2017 |
| P-16-0581 | October 10, 2018 |
| P-16-0587 | December 26, 2017 |
| P-17-0008 | December 26, 2017 |
| P-17-0009 | December 26, 2017 |
| P-17-0016-21 | December 26, 2017 |
| P-17-0024-25 | December 26, 2017 |
| P-17-0115 | June 21, 2018 |
| P-17-0117-118 | December 26, 2017 |
| P-17-0119 | June 21, 2018 |
| P-17-0121 | June 21, 2018 |
| P-17-0152 | June 21, 2018 |
| P-17-0157 | June 21, 2018 |
| P-17-0158 | December 26, 2017 |
| P-17-0185 | December 26, 2017 |
| P-17-0190 | December 26, 2017 |
| P-17-0207 | December 26, 2017 |
| P-17-0214 | December 26, 2017 |
| P-17-0215 | December 26, 2017 |
| P-17-0219 | December 26, 2017 |
| P-17-0227 | December 26, 2017 |
| P-17-0237/238 | December 26, 2017 |
| P-17-0245 | April 26, 2019 |
| P-17-0246 | December 26, 2017 |
| P-17-0249 | July 30, 2018 |

| | |
|---|---|
| P-17-0255 | December 26, 2017 |
| P-17-0256 | December 26, 2017 |
| P-17-0264 | December 26, 2017 |
| P-17-0267 | April 26, 2019 |
| P-17-0281 | March 1, 2019 |
| P-17-0282 | April 26, 2019 |
| P-17-0320 | April 26, 2019 |
| P-17-0336-338 | July 30, 2018 |
| P-17-0380-381 | July 30, 2018 |
| P-17-0382 | December 6, 2018 |
| P-17-0400 | April 26, 2019 |
| P-18-0041 | November 8, 2018 |
| P-18-0042 | April 26, 2019 |
| P-18-0052 | April 26, 2019 |
| P-18-0053 | April 26, 2019 |
| P-18-0064 | April 26, 2019 |
| P-18-0070 | October 10, 2018 |
| P-18-0078 | December 6, 2018 |
| P-18-0100 | October 10, 2018 |
| P-18-0102 | October 10, 2018 |
| P-18-0106 | April 26, 2019 |
| P-18-0114 | April 26, 2019 |
| P-18-0136 | December 6, 2018 |
| P-18-0137 | September 19, 2018 |
| P-18-0152 | March 28, 2019 |
| P-18-0154 | April 26, 2019 |
| P-18-0157 | April 26, 2019 |
| P-18-0169 | April 15, 2019 |
| P-18-0219 | March 1, 2019 |
| P-18-0224 | December 5, 2018 |
| P-18-0227 | October 10, 2018 |
| P-18-0237 | April 26, 2019 |
| P-18-0274 | April 26, 2019 |
| P-18-0275 | April 26, 2019 |
| P-18-0277 | April 15, 2019 |
| P-18-0278 | April 22, 2019 |
| P-18-0282 | April 26, 2019 |
| P-18-0284 | April 22, 2019 |
| P-18-0292 | April 26, 2019 |
| P-18-0324 | March 28, 2019 |
| P-18-0377 | February 28, 2019 |

| P-18-0385 | February 28, 2019 |
| P-19-0001 | February 28, 2019 |
| P-19-0002 | April 15, 2019 |
| P-19-0012 | February 28, 2019 |
| P-19-0013 | February 28, 2019 |
| P-19-0014 | February 28, 2019 |
| P-19-0015 | February 28, 2019 |
| P-19-0016 | February 28, 2019 |
| P-19-0017 | February 28, 2019 |
| P-19-0018 | February 28, 2019 |

**Table 8: PMN Public Files with no correspondence between EPA and the submitter**

| PMN Case No. | Date of Violation (Public file receipt date)[5] |
| --- | --- |
| P-14-0314 | December 26, 2017 |
| P-15-0726 | July 30, 2018 |
| P-16-0192 | October 10, 2018 |
| P-16-0292 | December 26, 2017 |
| P-16-0301 | December 26, 2017 |
| P-16-0302 | December 26, 2017 |
| P-16-0303 | December 26, 2017 |
| P-16-0341 | June 21, 2018 |
| P-16-0343 | December 26, 2017 |
| P-16-0344 | December 26, 2017 |
| P-16-0345 | June 21, 2018 |
| P-16-0348 | December 26, 2017 |
| P-16-0349 | June 21, 2018 |
| P-16-0354-355 | June 21, 2018 |
| P-16-0366 | December 26, 2017 |
| P-16-0373 | December 26, 2017 |
| P-16-0380-385 | October 10, 2018 |
| P-16-0391 | December 26, 2017 |
| P-16-0392 | December 26, 2017 |
| P-16-0400 | March 28, 2019 |
| P-16-0401 | December 26, 2017 |
| P-16-0403 | December 26, 2017 |
| P-16-0415 | April 24, 2018 |
| P-16-0426 | December 26, 2017 |
| P-16-0459 | December 26, 2017 |

[5] The date of violation is no later than the date on which EPA responded to the public file request by making the public file available to the requestor.

| | |
|---|---|
| P-16-0466 | December 26, 2017 |
| P-16-0483 | October 10, 2018 |
| P-16-0484 | October 10, 2018 |
| P-16-0492 | December 26, 2017 |
| P-16-0508 | December 26, 2017 |
| P-16-0510 | June 21, 2018 |
| P-16-0512 | June 21, 2018 |
| P-16-0515 | December 26, 2017 |
| P-16-0518-19 | December 26, 2017 |
| P-16-0545 | December 26, 2017 |
| P-16-0575 | October 10, 2018 |
| P-16-0578 | December 26, 2017 |
| P-16-0580 | December 26, 2017 |
| P-16-0588 | December 26, 2017 |
| P-16-0592 | December 26, 2017 |
| P-17-0008 | December 26, 2017 |
| P-17-0009 | December 26, 2017 |
| P-17-0014 | December 26, 2017 |
| P-17-0016-21 | December 26, 2017 |
| P-17-0024-25 | December 26, 2017 |
| P-17-0112 | December 26, 2017 |
| P-17-0115 | June 21, 2018 |
| P-17-0117-118 | December 26, 2017 |
| P-17-0119 | June 21, 2018 |
| P-17-0144 | December 26, 2017 |
| P-17-0157 | June 21, 2018 |
| P-17-0158 | December 26, 2017 |
| P-17-0160-161 | December 26, 2017 |
| P-17-0182 | December 26, 2017 |
| P-17-0185 | December 26, 2017 |
| P-17-0190 | December 26, 2017 |
| P-17-0194 | December 26, 2017 |
| P-17-0207 | December 26, 2017 |
| P-17-0214 | December 26, 2017 |
| P-17-0215 | December 26, 2017 |
| P-17-0219 | December 26, 2017 |
| P-17-0227 | December 26, 2017 |
| P-17-0245 | April 26, 2019 |
| P-17-0246 | December 26, 2017 |
| P-17-0249 | July 30, 2018 |
| P-17-0255 | December 26, 2017 |

| | |
|---|---|
| P-17-0256 | December 26, 2017 |
| P-17-0264 | December 26, 2017 |
| P-17-0266 | December 26, 2017 |
| P-17-0267 | April 26, 2019 |
| P-17-0282 | April 26, 2019 |
| P-17-0293 | December 26, 2017 |
| P-17-0300 | April 26, 2019 |
| P-17-0320 | April 26, 2019 |
| P-17-0332 | October 2, 2018 |
| P-17-0380-381 | July 30, 2018 |
| P-17-0382 | December 6, 2018 |
| P-17-0390 | December 26, 2017 |
| P-17-0400 | April 26, 2019 |
| P-18-0002 | April 24, 2018 |
| P-18-0007-8 | March 1, 2019 |
| P-18-0021 | April 24, 2018 |
| P-18-0024 | November 20, 2018 |
| P-18-0025 | November 20, 2018 |
| P-18-0026 | January 2, 2018 |
| P-18-0030 | November 20, 2018 |
| P-18-0032 | January 2, 2018 |
| P-18-0042 | April 26, 2019 |
| P-18-0044 | April 24, 2018 |
| P-18-0045 | April 24, 2018 |
| P-18-0052 | April 26, 2019 |
| P-18-0053 | April 26, 2019 |
| P-18-0054 | October 10, 2018 |
| P-18-0064 | April 26, 2019 |
| P-18-0068 | March 1, 2019 |
| P-18-0083 | April 24, 2018 |
| P-18-0100 | October 10, 2018 |
| P-18-0102 | October 10, 2018 |
| P-18-0106 | April 26, 2019 |
| P-18-0114 | April 26, 2019 |
| P-18-0116 | October 10, 2018 |
| P-18-0118-119 | April 15, 2019 |
| P-18-0136 | December 6, 2018 |
| P-18-0137 | September 19, 2018 |
| P-18-0146 | April 26, 2019 |
| P-18-0147 | March 28, 2019 |
| P-18-0150 | April 26, 2019 |

| P-18-0152 | March 28, 2019 |
| P-18-0154 | April 26, 2019 |
| P-18-0157 | April 26, 2019 |
| P-18-0159 | April 26, 2019 |
| P-18-0169 | April 15, 2019 |
| P-18-0212 | March 1, 2019 |
| P-18-0219 | March 1, 2019 |
| P-18-0221 | March 28, 2019 |
| P-18-0224-225 | December 5, 2018 |
| P-18-0227 | October 10, 2018 |
| P-18-0230 | October 2, 2018 |
| P-18-0231 | October 10, 2018 |
| P-18-0233 | November 20, 2018 |
| P-18-0237 | April 26, 2019 |
| P-18-0238 | March 28, 2019 |
| P-18-0261 | December 6, 2018 |
| P-18-0272 | April 15, 2019 |
| P-18-0274 | April 26, 2019 |
| P-18-0275 | April 26, 2019 |
| P-18-0277 | April 15, 2019 |
| P-18-0278 | April 22, 2019 |
| P-18-0279 | December 6, 2018 |
| P-18-0280 | April 26, 2019 |
| P-18-0282 | April 26, 2019 |
| P-18-0284 | April 22, 2019 |
| P-18-0286 | April 26, 2019 |
| P-18-0292 | April 26, 2019 |
| P-18-0319 | February 28, 2019 |
| P-18-0324 | March 28, 2019 |
| P-18-0377 | February 28, 2019 |
| P-18-0379 | April 15, 2019 |
| P-18-0385 | February 28, 2019 |
| P-19-0001 | February 28, 2019 |
| P-19-0002 | April 15, 2019 |
| P-19-0006 | March 28, 2019 |
| P-19-0007 | April 15, 2019 |
| P-19-0008 | March 28, 2019 |
| P-19-0012 | February 28, 2019 |
| P-19-0013 | February 28, 2019 |
| P-19-0014 | February 28, 2019 |
| P-19-0015 | February 28, 2019 |

| | |
|---|---|
| P-19-0016 | February 28, 2019 |
| P-19-0017 | February 28, 2019 |
| P-19-0018 | February 28, 2019 |
| P-19-0019 | February 28, 2019 |
| P-19-0020 | February 28, 2019 |
| P-19-0021-22 | February 28, 2019 |
| P-19-0023 | February 28, 2019 |
| P-19-0025 | February 28, 2019 |
| P-19-0025 | April 15, 2019 |
| P-19-0026 | February 28, 2019 |
| P-19-0026 | April 22, 2019 |
| P-19-0027 | February 28, 2019 |

**Table 9: PMN public files containing confidentiality claims but also lacking substantiation documents**

| PMN Case No. | Date of Violation (Public file receipt date) |
|---|---|
| P-14-0314 | December 26, 2017 |
| P-15-0726 | July 30, 2018 |
| P-16-0192 | October 10, 2018 |
| P-16-0292 | December 26, 2017 |
| P-16-0301 | December 26, 2017 |
| P-16-0302 | December 26, 2017 |
| P-16-0340 | December 26, 2017 |
| P-16-0341 | June 21, 2018 |
| P-16-0343 | December 26, 2017 |
| P-16-0344 | December 26, 2017 |
| P-16-0348 | December 26, 2017 |
| P-16-0349 | June 21, 2018 |
| P-16-0351 | December 26, 2017 |
| P-16-0354-355 | June 21, 2018 |
| P-16-0366 | December 26, 2017 |
| P-16-0373 | December 26, 2017 |
| P-16-0391 | December 26, 2017 |
| P-16-0392 | December 26, 2017 |
| P-16-0401 | December 26, 2017 |
| P-16-0403 | December 26, 2017 |
| P-16-0415 | April 24, 2018 |
| P-16-0426 | December 26, 2017 |
| P-16-0483 | October 10, 2018 |

| P-16-0484 | October 10, 2018 |
| P-16-0492 | December 26, 2017 |
| P-16-0509 | June 21, 2018 |
| P-16-0512 | June 21, 2018 |
| P-16-0515 | December 26, 2017 |
| P-16-0518-519 | December 26, 2017 |
| P-16-0545 | December 26, 2017 |
| P-16-0580 | December 26, 2017 |
| P-16-0588 | December 26, 2017 |
| P-17-0008 | December 26, 2017 |
| P-17-0009 | December 26, 2017 |
| P-17-0024-25 | December 26, 2017 |
| P-17-0112 | December 26, 2017 |
| P-17-0144 | December 26, 2017 |
| P-17-0157 | June 21, 2018 |
| P-17-0158 | December 26, 2017 |
| P-17-0182 | December 26, 2017 |
| P-17-0194 | December 26, 2017 |
| P-17-0214 | December 26, 2017 |
| P-17-0215 | December 26, 2017 |
| P-17-0219 | December 26, 2017 |
| P-17-0249 | July 30, 2018 |
| P-17-0264 | December 26, 2017 |
| P-17-0267 | April 27, 2019 |
| P-17-0293 | December 26, 2017 |
| P-17-0320 | April 28, 2019 |
| P-17-0332 | October 2, 2018 |
| P-17-0336-338 | July 30, 2018 |
| P-17-0380-381 | July 30, 2018 |
| P-17-0400 | April 29, 2019 |
| P-18-0007-8 | March 1, 2019 |
| P-18-0030 | November 20, 2018 |
| P-18-0042 | April 30, 2019 |
| P-18-0053 | May 1, 2019 |
| P-18-0068 | March 1, 2019 |
| P-18-0077 | April 15, 2019 |
| P-18-0100 | October 10, 2018 |
| P-18-0102 | October 10, 2018 |
| P-18-0106 | May 3, 2019 |
| P-18-0107 | April 15, 2019 |
| P-18-0114 | May 4, 2019 |

| P-18-0118-119 | April 15, 2019 |
|---|---|
| P-18-0146 | May 5, 2019 |
| P-18-0150 | May 6, 2019 |
| P-18-0152 | March 28, 2019 |
| P-18-0154 | May 7, 2019 |
| P-18-0212 | March 1, 2019 |
| P-18-0231 | October 10, 2018 |
| P-18-0238 | March 28, 2019 |
| P-18-0261 | December 6, 2018 |
| P-18-0272 | April 15, 2019 |
| P-18-0279 | December 6, 2018 |
| P-18-0280 | May 11, 2019 |
| P-18-0282 | May 12, 2019 |
| P-18-0284 | April 22, 2019 |
| P-18-0286 | May 13, 2019 |
| P-19-0002 | April 15, 2019 |
| P-19-0006 | March 28, 2019 |
| P-19-0007 | April 15, 2019 |
| P-19-0008 | March 28, 2019 |
| P-19-0012 | February 28, 2019 |
| P-19-0021-22 | February 28, 2019 |
| P-19-0023 | February 28, 2019 |
| P-19-0025 | February 28, 2019 |
| P-19-0026 | February 28, 2019 |
| P-19-0026 | April 22, 2019 |
| P-19-0027 | February 28, 2019 |

**Table 10: PMNs which claim exemptions under § 2613(c)(2) for information and entire documents that clearly do not fall within the cited exemption**

| PMN Case No. | Claimed Exemption under TSCA 14(c)(2) | Information or Document Inconsistent with Claim | Date of Violation (EPA receipt date) |
|---|---|---|---|
| P-17-0190 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | December 26, 2016 |
| P-17-0160-61 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | September 13, 2017 |
| P-16-0578 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | October 21, 2016 |
| P-16-0303 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | April 6, 2016 |
| P-16-0281 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | March 30, 2016 |

| P-17-0246 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | February 28, 2017 |
|---|---|---|---|
| P-18-0054 | AABC | Occupational exposureEnvironmental releasesSafety data sheet (SDS)Number of sites | November 20, 2017 |
| P-17-0115 | A | Byproducts | November 16, 2016 |
| P-18-0021 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | October 17, 2017 |
| P-17-0207 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | January 23, 2017 |
| P-17-0016-21 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | October 27, 2016 |

| P-17-0152 | A<br>A<br>B<br>C | Occupational exposure<br>Environmental releases<br>Safety data sheet (SDS)<br>Number of sites | November 28, 2016 |
|-----------|------------------|----------------------------------------------------------------------------------------------|-------------------|
| P-18-0002 | C | Number of sites controlled by others | October 2, 2017 |
| P-16-0466 | E | Pollution prevention information | July 11, 2016 |
| P-17-0227 | E | Pollution prevention information | February 1, 2017 |
| P-17-0185 | E | Pollution prevention information | December 20, 2016 |

DATED:          March 18, 2020                    Respectfully Submitted,

/s/ Tosh Sagar
Tosh Sagar (D.C. Bar No. 1562693)
Earthjustice
1001 G Street, NW, Ste. 1000
Washington, DC 20001
tsagar@earthjustice.org
Tel: 202-667-4500
Fax: 202-667-2356

*Attorney for Plaintiffs*