# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ENVIRONMENTAL DEFENSE FUND, et al.,

      Plaintiffs**,**

v.

MICHAEL REGAN, Administrator, U.S. Environmental Protection Agency, in his official capacity, et al.,

      Defendants.

Civil Action No. 1:20-cv-762 (EGS)

## <u>REPLY MEMORANDUM IN SUPPORT OF<br>EPA'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

   I.     Plaintiffs' APA Claims Are Not Reviewable And Should Be Dismissed ........................... 1

   II.    Counts Three Through Ten Are Not Subject To Review Under 15 U.S.C. § 2619(a)(2)
        Because The Statute Does Not Impose A Date-Certain Deadline ................................... 6

   III.   Plaintiffs' Pattern-or-Practice Claims Should Be Dismissed .......................................... 9

   IV.   The Court Should Dismiss Plaintiffs' Counts One Through Three Because Plaintiffs Lack
        Standing ...................................................................................................................... 13

CONCLUSION ..................................................................................................................... 16

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)...................................................................................................10

*Am. Farm Bureau v. U.S. EPA*,
  121 F. Supp. 2d 84 (D.D.C. 2000) ...........................................................................5

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...............................................................................................3, 4

*Conservation Force v. Salazar*,
  753 F. Supp. 2d 29 (D.D.C. 2010),
  *aff'd*, 699 F.3d 538 (D.C. Cir. 2012) .......................................................................7

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008)................................................................................................14

*Defs. of Wildlife v. Browner*,
  888 F. Supp. 1005 (D. Ariz. 1995) ...........................................................................7

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006).....................................................................................2

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  920 F.3d 1 (D.C. Cir. 2019).....................................................................................10

*Hisp. Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) ................................................................................12

*Judicial Watch v. National Energy Policy Develop. Grp.*,
  219 F. Supp. 2d 20 (D.D.C. 2002)............................................................................5

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec'y*,
  895 F.3d 770 (D.C. Cir. 2018) ................................................................................12

*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ................................................................................12

*Rushing v. Leavitt*,
  No. Civ.A.03-1969(CKK), 2005 WL 555415 (D.D.C. Mar. 7, 2005) ........................9

*Seeger v. United States Dep't of Def.*,
  306 F. Supp. 3d 265 (D.D.C. 2018)...........................................................................1

*Sierra Club v. Thomas*,
 828 F.2d 783 (D.C. Cir. 1987) ..................................................................7, 8, 9

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021) ..............................................................................11, 15

*Trumpeter Swan Soc'y v. EPA*,
 774 F.3d 1037 (D.C. Cir. 2014) .......................................................................4

*Valero Energy Corp. v. EPA*,
 927 F.3d 532 (D.C. Cir. 2019) .........................................................................3

*Waterkeeper All., Inc. v. Wheeler*,
 No. CV 18-2230 (JDB), 2020 WL 1873564 (D.D.C. Apr. 15, 2020),
 *vacated and remanded sub nom.*
 *Waterkeeper All., Inc. v. Regan*, 41 F.4th 654 (D.C. Cir. 2022) ...................8

**STATUTES**

5 U.S.C. § 551(11) ...............................................................................................2

5 U.S.C. § 551(13) ...............................................................................................2

15 U.S.C. § 2601 .................................................................................................5

15 U.S.C. § 2603 ...............................................................................................15

15 U.S.C. § 2604 .................................................................................................4

15 U.S.C. § 2604(b) ..........................................................................................15

15 U.S.C. § 2604(b)(3) ................................................................................4, 5, 8

15 U.S.C. § 2604(d) .........................................................................................4, 5

15 U.S.C. § 2604(d)(2) ..................................................................................7, 14

15 U.S.C. § 2604(h)(6) ...........................................................................4, 5, 7, 8

15 U.S.C. § 2604(b) ..........................................................................................15

15 U.S.C. § 2613(c)(1)(A) ..................................................................................3

15 U.S.C. § 2619(a)(2) .....................................................................................6, 7

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 720.70(b)(3)................................................................................................15

40 C.F.R. § 720.95 .......................................................................................................3

**FEDERAL REGISTER**

87 Fed. Reg. 15237 (Mar. 17, 2022)............................................................................15

**INTRODUCTION**

Plaintiffs claim to have filed this action as part of a years-long effort to reshape the process by which the U.S. Environmental Protection Agency (EPA) evaluates the potential for risk posed by the manufacture of new chemical substances and ultimately issues final risk determinations. But rather than challenging any individual EPA risk determinations, they instead assert that certain interim procedural steps are themselves final agency actions independent from the overall risk determination process.  However, Plaintiffs have failed to plead a single, reviewable claim.  Their allegations are not reviewable under the Administrative Procedure Act (APA) because they do not pertain to "final agency action."  Nor are the majority of their allegations reviewable under the citizen-suit provision of the Toxic Substances Control Act (TSCA), because Plaintiffs fail to identify a non-discretionary duty under either the statute or its implementing regulations. Plaintiffs' pattern-or-practice claims are improper, and even if cognizable, would be moot.  And they lack standing to bring several of their claims.  Plaintiffs' Opposition to the Motion for Judgment on the Pleadings (ECF 48) filed by Defendants Michael Regan and EPA (collectively, EPA) does not refute any of this.  The Court should grant EPA's motion and dismiss all claims.

**ARGUMENT**

**I.    Plaintiffs' APA Claims Are Not Reviewable And Should Be Dismissed.**

As EPA established in its opening brief, none of Plaintiffs' APA claims concern "agency action" as defined by the APA, much less "final agency action."  *See* Defs.' Mem. of P. & A. in Support of EPA's Mot. for J. on the Pleadings and in Opp'n to Pls.' Mot. to Compel (ECF 47) [hereinafter "Defs.' Mem."] at 19-22.  They should be dismissed.  *See Seeger v. United States Dep't of Def.*, 306 F. Supp. 3d 265, 282 (D.D.C. 2018) ("[A]lthough the question [of reviewability under the APA] is not jurisdictional, it is a threshold question: the Court cannot review an action that is outside the Court's authority to review." (cleaned up)).

1

The kinds of alleged actions—or failures to take action[1]—at issue here do not meet the APA's definition of "agency action." 5 U.S.C. § 551(13).  The definitional list provided at § 551(13) "is not so all-encompassing as to authorize [courts] to exercise judicial review over everything done by an administrative agency." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006).  Plaintiffs argue that their complaint concerns actions or inactions that meet the APA's definition of "relief," which is included in the definition of "agency action." Pls.' Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings (ECF 56) [hereinafter "Opp'n"] at 20.  "Relief" includes three classes of activity: "(A) grant of money, assistance, license, authority, exemption, exception, privilege, or remedy; (B) recognition of a claim, right, immunity, privilege, exemption, or exception; or (C) taking of other action on the application or petition or, and beneficial to, a person." 5 U.S.C. § 551(11).  Plaintiffs maintain that EPA granted them "relief" by providing Plaintiffs with information to which they were statutorily entitled and that denying certain information was a "denial thereof" under § 551(13).  In doing so, they argue, EPA exercised its power in recognition of Plaintiffs' right to the information.  Opp'n at 20.  But EPA did not take any final agency action or "recognize" any right of these Plaintiffs—instead, it merely took ministerial steps of publishing notices of receipt or compiling public files. *See* Defs.' Mem. at 19-20.

Plaintiffs take issue with EPA's explanation of the relevant conduct and maintain that the Court cannot credit it because it is premised on "factual issues that are in dispute." Opp'n at 21.  There is no plausible factual dispute, however.  Plaintiffs point to ¶ 104 of their First Amended

---

[1] Plaintiffs continue to insist that their claims concern agency actions rather than inaction.  They characterize EPA's arguments to the contrary as being based on a "linguistic contrivance."  Opp'n at 27 (citing Defs.' Mem. at 12 n.6, where EPA identified multiple instances where Plaintiffs allege that EPA failed to take certain action).  But EPA's argument is not based on the fact that Plaintiffs simply used the word "fail" or variations of it simply to establish that EPA did not meet its legal obligations.  Rather, the nature of the alleged violations themselves concern a failure to take certain action, whether that be to publish timely and complete notice of receipt or include certain documents in the public file.

Complaint (ECF 16), which alleges that "EPA staff . . . screen the PMN public file[s] for purportedly confidential information before making it available to interested members of the public," Opp'n at 21 (citing FAC ¶ 104).  But that is consistent with the fact that EPA makes available only material not claimed as confidential by the submitter, without reviewing or otherwise making any determination with respect to those designations.  Indeed, that is what the parties have stipulated to in this case.  ECF 45-3 (Joint Stips.) ¶ 7 ("When EPA provided Plaintiffs with the PMN public file, EPA provided the document to Plaintiffs *as redacted by the PMN submitter* … .") (emphasis added)); *see also id.* ¶ 8 ("EPA provided the safety data sheet to Plaintiffs *as redacted by the PMN submitter* … ." (emphasis added)).  It is also consistent with the statute, the regulations, and EPA's sworn declaration, which is owed a presumption of good faith. *See* 42 U.S.C. § 2613(c)(1)(A) (identifying the submitter as the party that "shall assert to [EPA] a claim for protection"); 40 C.F.R. § 720.95 (identifying materials to be included in the public file "unless such materials are claimed confidential'); Declaration of Dr. Tala R. Henry (ECF 47-1) ¶¶ 20, 23-28 [hereinafter "Decl."] (describing EPA's approach to material designated as confidential by submitter); *see also* Defs.' Mem. at 32-33.  There simply is no factual dispute preventing dismissal.

But even if the Court were to find that such activity satisfies the "agency action" definition, it does not constitute final agency action.  For an agency action to be final two conditions must be met: (1) the action marks the consummation of the agency's decisionmaking process and (2) it is an action by which rights or obligations have been determined, or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  "Because *both* prongs of *Bennett v. Spear* must be satisfied independently, the failure to satisfy either prong means that the challenged action is nonfinal." *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (D.C. Cir. 2019) (cleaned up)

3

(emphasis in original).  Plaintiffs satisfy neither.

Plaintiffs' argument relies on their mischaracterization of TSCA's Section 5 (15 U.S.C. § 2604) as giving rise to a "freestanding," independently enforceable right to information. Plaintiffs then frame the *Bennett* factors in the context of EPA's alleged denial of that "right," artificially severing the disclosure of information from the broader context of the statutory structure.  Though Plaintiffs repeatedly characterize their access to information as being a "freestanding" right, simply describing it as such does not make it so.

TSCA is not a public disclosure statute; rather, Congress enacted TSCA to "authorize[] EPA to regulate chemical substances that it has a reasonable basis to conclude present or will present an unreasonable risk of injury to health or the environment."  *Trumpeter Swan Soc'y v. EPA*, 774 F.3d 1037, 1039 (D.C. Cir. 2014) (cleaned up).  The statutory structure of Section 5 confirms as much by providing a framework for EPA to evaluate the likelihood of risk posed by the manufacture or import of new chemical substances.  Defs.' Mem. at 3-8 (statutory and regulatory background).  Under Section 5, EPA must follow several procedures in the process of determining whether a new chemical substance requires regulation.  Included among these are the provisions at issue in this case, through which Congress created a pathway for the public to participate in EPA's evaluation process to better inform EPA's risk determination.  Specifically, Congress directed EPA to provide the public with notice of receipt of pre-manufacturing notices (PMNs) and test marketing exemption (TME) applications and to make non-confidential PMN information available for examination by interested persons.  *See* 15 U.S.C. §§ 2604(b)(3), (d), (h)(6).  Indeed, Plaintiffs themselves acknowledge as much elsewhere in their brief.  Opp'n at 30, 31 (arguing that the court can ascertain a 90-day deadline for EPA to make available PMN files "for the public to effectively participate in [its] decision-making process").  However, it is only

when EPA issues its determination as to the likelihood of risk posed by the new chemical substance that it completes its decisionmaking process and takes a final agency action.  When it does so, a plaintiff with standing could then challenge that final agency action, including by alleging any procedural failures along the way.  There is no support for Plaintiffs' view that Congress intended for these requirements to exist for the independent purpose of providing information separate and apart from EPA's risk determination.

This case thus differs meaningfully from that of *Judicial Watch v. National Energy Policy Development Group*, 219 F. Supp. 2d 20 (D.D.C. 2002).  *See* Opp'n at 17-19.  *Judicial Watch* concerned the Federal Advisory Committee Act (FACA), which defines how federal advisory committees operate, including by establishing governing procedures (§ 2(b)(4)) and ensuring that Congress and the public are "kept informed" as to committee activities (§ 2(b)(5)).  *Compare* 15 U.S.C. § 2601 (including no reference to public disclosure or similar objectives in statement of Congress's "[f]indings, policy, and intent" in passing TSCA).  As courts have observed, FACA "specifically provide[s] for and [is] intended to promote disclosure and public access to the workings of government and a policy of government in the sunshine." *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 98 (D.D.C. 2000).  Thus, unlike Section 5 of TSCA, FACA's § 10 requirements create a general right to information from federal advisory committees, independent of any particular agency action.  In *Judicial Watch*, this Court relied on the general nature of FACA, observing that "FACA obligates the government to make open and available to the public the meetings and records of advisory committees generally, without respect to any particular request." 219 F. Supp. 2d at 40.  Accordingly, this Court held that a plaintiff could sue to seek disclosure of information whenever an agency held meetings without granting public access.  By contrast, Section 5 requires only disclosure of certain information that is linked to a specific, final

agency action: an evaluation of the risk posed by a new chemical substance to human health and environment.[2]

Here, Plaintiffs have alleged errors in interim steps made as part of a broader process that concludes with a final agency action.  Rather than bringing a suit to challenge the end result of that process, however, they have tried to turn the alleged procedural violations into independent claims.  That is exactly what the APA's reviewability provisions are designed to prevent.  The APA requires review of such claims in the context of the *final* agency action—here, the risk determination.  The existence of an alleged procedural violation does not itself satisfy the *Bennett* test.  Even if it did, however, the alleged action (or failure to act) did not constitute the culmination of the agency's decisionmaking process, which did not end until EPA had made its final risk determination.

## II.   Counts Three Through Ten Are Not Subject To Review Under 15 U.S.C. § 2619(a)(2) Because The Statute Does Not Impose A Date-Certain Deadline.

The parties agree that a non-discretionary duty claim may only be brought where the statute imposes a date-certain deadline.  Opp'n at 29.  If a statute does not impose such a deadline, then Plaintiffs only recourse is through an APA claim for unreasonable delay, which would be unreviewable for the reasons discussed in Defendants' opening memorandum.  *See* Defs.' Mem. at 19-22; *supra* at 1-6.  If Congress has left to the agency some measure of discretion with respect to the timing of its action, the statute has not imposed a date-certain deadline.  *See* Defs.' Mem. at

---

[2] Plaintiffs note that TSCA requires EPA to complete its evaluation of the PMN within 90 days and then establishes a limited statutory period in which to raise challenges to that evaluation.  Opp'n at 24.  Plaintiffs then argue that this ordinary statutory framework may prevent them from satisfying their "pressing need for information about a chemical after EPA has completed its review."  *Id.* at 25.  As explained, however, TSCA does not grant Plaintiffs a freestanding right to this information untethered to EPA's risk determination.  *Supra* at 3-6.  That does not mean that Plaintiffs can never access this information if the statutory period to challenge EPA's risk determination has closed.  It only means that, at that time, they may need to pursue access to those records by other means—for example, by filing a request pursuant to the Freedom of Information Act.

15 (citing *Conservation Force v. Salazar*, 753 F. Supp. 2d 29, 34-35 (D.D.C. 2010), *aff'd*, 699 F.3d 538 (D.C. Cir. 2012)).

TSCA does not impose a date-certain deadline for the alleged duties at issue in Plaintiffs' Counts Three through Ten.  These counts allege a duty to publish notice of receipt of a TME application "immediately" (Count Three), to make PMN files available on www.regulations.gov (Count Four), and to make available all information submitted with a PMN subject to the provisions of § 2613 upon request (Counts Five through Ten).  Even assuming such duties exist, the statute does not impose any certain deadline for action, not even one that is "readily-ascertainable by reference to some other fixed date or event," *Sierra Club v. Thomas*, 828 F.2d 783, 790-91 (D.C. Cir. 1987).  Defs.' Mem. at 15-17.  Accordingly, Plaintiffs' § 2619(a)(2) claims for these Counts must be dismissed.

Plaintiffs maintain that the duty at issue in Count Three—to publish notice of receipt of a TME application "immediately" (15 U.S.C. § 2604(h)(6))—imposes a date-certain deadline on EPA.  Opp'n at 32.  The word "immediately" though is exactly the kind of word that lacks any discernible bright-line rule for action or a meaningful standard for a court to determine whether an agency satisfied its duty.  In such cases, courts should not impose a non-discretionary duty upon the agency.  *See* Defs.' Mem. at 26-27; *see also, e.g.*, *Defs. of Wildlife v. Browner*, 888 F. Supp. 1005, 1008 (D. Ariz. 1995) (refusing to infer date-certain deadline where statute required EPA to act "promptly").  Moreover, Congress knows how to include mandatory deadlines when it so chooses.  Indeed, it did so when dictating the time in which EPA should publish notice of receipt of PMNs.  *Compare* 15 U.S.C. § 2604(d)(2) (requiring EPA to publish notice of receipt of a PMN in the Federal Register within five days), *with id.* § 2604(h)(6) (requiring "immediate" publication of notice of receipt of TME applications).  Its decision not to include such a deadline for TME

applications is telling.

For Counts Four through Ten, Plaintiffs argue that the Court can infer date-certain deadlines for these duties from the statute by inferring that EPA was required to perform these alleged duties at least before EPA completes its risk determination for the new chemical substance. Opp'n at 30-32. However, as the D.C. Circuit observed, courts should infer such deadlines in only "very rare" cases and only when "upon extensive analysis, one can conclude that an inferable deadline imposes a mandatory duty of timeliness." *Sierra Club*, 828 F.2d at 791. Courts have infrequently inferred such deadlines when, for example, a statute's structure contemplates a clear sequence of events that must be followed for the prescribed agency action. Such a statutory structure was at issue in *Waterkeeper*, on which Plaintiffs rely. Opp'n at 29 (citing *Waterkeeper All., Inc. v. Wheeler*, No. CV 18-2230 (JDB), 2020 WL 1873564 (D.D.C. Apr. 15, 2020), *vacated and remanded sub nom. Waterkeeper All., Inc. v. Regan*, 41 F.4th 654 (D.C. Cir. 2022)). There, the Court observed in dicta that it might be able to infer a deadline where the statute required the agency to publish guidelines for participation in its review of state programs before it in fact reviewed any such programs. *Waterkeeper All., Inc.*, 2020 WL 1873564 at *4. TSCA's statutory structure is markedly different. The statute provides only that such information "shall be made available, subject to section 2613 of this title, for examination by interested persons." 15 U.S.C. § 2604(b)(3). It does not require the provision of this information as a condition precedent for EPA's risk determination. Put differently, EPA can and must make its risk determination on a PMN submission within the statutorily prescribed time period even if an interested party does not request access to PMN information and does not participate in EPA's evaluation of the PMN by providing information for the Agency to consider when making its determination.

Moreover, Congress' refusal to impose a deadline either for interested persons to request

access to such information or for EPA to respond to any such requests makes sense, as EPA is "more aware of its own limitations of staffing and budget, factors which would influence response time, than the Court."  *Rushing v. Leavitt*, No. Civ.A.03-1969(CKK), 2005 WL 555415, at *10 (D.D.C. Mar. 7, 2005).  As the D.C. Circuit explained, when considering "a statutory framework that will almost necessarily place competing demands upon the agency's time and resources," it is "highly improbable" that such a deadline can be inferred.  *Sierra Club*, 828 F.2d at 791.  In such cases, it will be "almost impossible" for a court to conclude that Congress afforded the action "such [a] high priority as to impose upon the agency a categorical mandate that deprives it of all discretion over the timing of its work."  *Id.* (cleaned up).

## III.    Plaintiffs' Pattern-or-Practice Claims Should Be Dismissed.

Plaintiffs assert "pattern-or-practice" claims on the grounds that the multiple, discrete procedural violations that they allege amount to a de facto policy by the Agency.  However, these claims fail for two reasons.  First, for all of Plaintiffs' claims regarding non-confidential information, while EPA has acknowledged some prior deficiencies, it has since revised its practices to correct them.  Second, for Plaintiffs' claims regarding confidential information, EPA's practice is informed by its good faith understanding of the statute, and that understanding would be subject to judicial review if properly pled under the APA (*i.e.*, in a challenge to a final agency action brought by a plaintiff with standing).

Plaintiffs' so-called pattern-or-practice claims that do not pertain to the treatment of information claimed confidential are plainly moot because EPA has adopted new practices that correct its acknowledged past errors.  *See* Defs.' Mem. at 22-23 (citing Decl. ¶¶ 66-71).  Though Plaintiffs cite case law for the proposition that, in rare circumstances, parties may challenge de facto agency policies even when individual applications of those policies have been mooted, *see*

Opp'n at 35, none of those cases stand for the proposition that a party can challenge a *defunct* alleged de facto policy that the agency does not follow.  Even if EPA's omission of non-confidential information from notices of receipt or public files could be characterized as a de facto policy, there is no dispute that EPA has changed its approach.  *See* Defs.' Mem. at 22-23.

Plaintiffs invoke the exception to mootness for voluntary cessation, Opp'n at 37-39, but that doctrine is focused on gamesmanship.  *See Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 15 (D.C. Cir. 2019) (voluntary cessation doctrine "presupposes that the infringing party voluntarily exercises its own unilateral power not only to terminate the suit and evade judicial review, but also to 'pick up where he left off' and complete the devious 'cycle' after the litigation is dismissed" (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  Any notion that EPA has changed its policies here for the specific purpose of evading judicial review is wholly unsupported.  In this litigation, EPA has readily acknowledged certain prior shortcomings in its obligations to make available certain information to the public.  *See, e.g.*, Defs.' Mem. at 26.  But EPA has been engaging in extensive efforts to increase its compliance with TSCA's mandates that began even before this lawsuit was filed, in response to Congressional interest among other things, and these efforts continue presently.  *See id.* at 22-23 (citing Decl. ¶¶ 17, 27, 67).  EPA has improved and expedited its entire process for making new chemical application information available to the public, including by developing automated processes for uploading such information to its website.  *Id.* at 22-23 (citing Decl. ¶¶ 68-69).  It uses these improved and automated processes for *all* incoming PMNs and has been doing so for some time. *Id.*  There is no plausible argument that EPA will revert back to its former processes upon the termination of this lawsuit.

Plaintiffs suggest that EPA has not changed its policy regarding publication of notices of

receipt in the Federal Register within 5 business days of receipt and thus EPA will allegedly continue to violate the law.  Opp'n at 37.  However, Plaintiffs have not—and cannot—seriously allege that they will be harmed by any such policy.  As part of its policy changes, EPA posts incoming PMNs, attachments, and amended versions to its public website largely within 5 days of receipt.  Decl. ¶ 69.  It does the same with other Section 5 submissions, such as TME applications, and is continuing to develop processes to allow it to similarly publish support documents.  *Id.*  As a result of these improvements, interested parties do not need to rely on the Federal Register for notice of the receipt of these submissions as they instead have ready access to the same information required to be included in those notices (and more) within 5 days on EPA's webpage.  Nor do parties need to affirmatively request a public file.  Instead, they are free to access whatever non-confidential information that has been submitted to EPA via the website within 5 business days of EPA receiving it.  Plaintiffs cannot assert a claim of future injury simply because they must access that information on a website instead of in the Federal Register.[3]  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) (plaintiffs did not suffer injury where they alleged only that "they received [required information] *in the wrong format*" (emphasis added)).  Additionally, to the extent that Plaintiffs are seeking to reshape the agency's policies to comply with Plaintiffs' preferences, such effort amounts to an impermissible programmatic challenge.  *See* Defs.' Mem. at 22.

Plaintiffs' confidential information claims do not support a "pattern-or-practice" claim either.  Plaintiffs reference "EPA's repeated assertions that it does not intend to follow the law going forward."  Opp'n at 35.  In doing so, they elide the parties' fundamental disagreement about

---

[3] Congress enacted TSCA in 1976 before online access by the public to government databases was readily available. Understandably, then, its public disclosure provisions relied on other methods for disseminating information to the public, such as publication in the Federal Register.

what the law requires and indeed permits.  EPA is not "ignoring" straightforward requirements, *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 387 (D.C. Cir. 2018), engaging in a "failure to abide by the terms" of TSCA, *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988), or acting "so delinquent or recalcitrant," *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec'y*, 895 F.3d 770, 783 (D.C. Cir. 2018) as to warrant prospective relief.  Rather, EPA's policy is informed by its good faith understanding of the law.

More significantly, courts in this Circuit have recognized "pattern-or-practice" claims only in limited circumstances where agencies have engaged in efforts that effectively preclude judicial review of applications of those policies.  *See, e.g.*, *Payne Enters., Inc.*, 837 F.2d at 491 (allowing review of agency's FOIA practice of invoking unwarranted FOIA exemptions in response to certain requests, despite fact that agency had mooted plaintiff's individual requests).  Plaintiffs rely heavily on *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018), but that case presents materially different circumstances.  There, plaintiffs alleged that the United States had a *sub silentio* policy of unlawfully extending "temporary" visas to ranchers for non-temporary work. *Id.* at 382.  The district court construed the claims as relating to the agency's regulations and went on to dismiss them as time-barred.  The circuit court reversed, holding unremarkably that "[a]n agency's unannounced departure in practice from a written regulation is a distinct form of agency action that is challengeable, separate and apart from adoption of the regulation itself."  *Id.* at 387. Although the court held that the adoption of the unwritten policy was final and subject to challenge under the APA, the parties did not brief—and the court did not address—whether review of this practice would have been available through ordinary APA review of the discrete agency action. Given the unlikelihood that a third party would be able to establish standing or would have a cause of action to challenge individual visas, it is very likely no such review was available.

Here, EPA is not engaging in a cynical effort to evade judicial review of its understanding of the statute by voluntarily providing the confidential material to plaintiffs and mooting their claims.  Quite the opposite; consistent with Congress's mandate, EPA has repeatedly explained that it does not intend to disclose confidential information except as provided for by 15 U.S.C. § 2619.  EPA has taken no action to shield confidentiality designations from judicial review.  Those designations remain fully reviewable in court, but only through the proper mechanism under the APA—a challenge to EPA's determination as to the likelihood of risk posed by the new chemical substance.  Here, however, Plaintiffs' claims are unreviewable under the APA not because of EPA's actions but because Plaintiffs have not challenged final agency action, *see supra* at 3-6. The Court should not permit Plaintiffs to manufacture reviewability of these claims simply by couching their claims as a "pattern or practice" challenge.

## IV.   The Court Should Dismiss Plaintiffs' Counts One Through Three Because Plaintiffs Lack Standing.

Plaintiffs lack standing to seek relief for Counts One through Three, which concern EPA's alleged duty to publish timely notices of receipt and, where required, include a list of test data submitted with a PMN.[4]  There is no dispute that EPA has published the notices of receipt at issue nor that EPA has since provided Plaintiffs with test data subject to the confidentiality provisions of § 2613.  Plaintiffs cannot claim to be injured when they have already received the only relief to which they are entitled.  *See* Defs.' Mem. at 17-19.  Moreover, even if the alleged delay in publishing these notices prevented Plaintiffs from meaningfully participating in EPA's evaluation process, the Court could not redress that injury now as EPA has completed its review of all but six

---

[4] In its opening brief, EPA sought dismissal of Counts One and Two for lack of standing and further sought dismissal of Count Three for the same reasons if the Court did not dismiss that Count on other grounds.  *See* Defs.' Mem. at 17-19.

submissions.[5]  *Id.* at 18.

Plaintiffs attempt to avoid dismissal by offering generalized arguments about their standing to bring this lawsuit writ large.[6]  But "[s]tanding is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up).  Plaintiffs have failed to do so for Counts One through Three.

Despite already having the relief they would be entitled to for these alleged violations, Plaintiffs' theory for standing for Counts One through Three rests on their unsupportable suggestion that they will suffer a likelihood of future injury.  With respect to publication of notices of receipt in the Federal Register (Counts One and Three), as explained, EPA will make this information available on its website within 5 business days and will publish notices in the Federal Register on a monthly basis.  *See supra* at 10-11.  Plaintiffs cannot identify any injury from having ready access to that information online within the statutorily prescribed time even if it is not in the Federal Register, and thus lack standing to assert these claims.  *See supra id.*

In Count Two, Plaintiffs allege that EPA has violated its own regulation requiring it to provide a list in the Federal Register notice of receipt of all test data submitted.   Significantly, Plaintiffs misstate EPA's obligation with respect to test data.  Throughout their brief, Plaintiffs claim that EPA failed to summarize test data in the notices of receipt.  *See, e.g.*, Opp'n at 44. However, TSCA requires only that EPA summarize test data that is submitted pursuant to §§ 2603 or 2604(b).   15 U.S.C. § 2604(d)(2); *see also* Defs.' Mem. at 4 (statutory and regulatory

---

[5] As for the six exceptions, EPA published notices of receipt long ago and Plaintiffs have had sufficient time to participate in EPA's review if they so wished.  Defs.' Mem. at 18 n.8.
[6] Plaintiffs spend multiple pages arguing that they have standing for Counts Four through Ten, even stating that "EPA is unable to articulate a colorable challenge to Plaintiffs' standing" for those Counts.  Opp'n at 40.  As Plaintiffs later acknowledge, though, "EPA challenges Plaintiffs' standing for Counts One through Three only."  *Id.* at 43.

background).  None of the submissions at issue in this case were submitted pursuant to §§ 2603 or 2604(b), so EPA had no obligation to summarize any test data.

In contrast to this statutory requirement, EPA regulation requires that notices of receipt contain a list of any test data submitted with a PMN.  40 C.F.R. § 720.70(b)(3).  While EPA did not provide a full list of test data in the relevant notices of receipt, *id.* at 9, it in fact has provided Plaintiffs with the *actual* documents that they claim should have been included in that list. Plaintiffs maintain that they were nevertheless injured because EPA withheld information designated as confidential and, they claim, this information included certain test data.  Opp'n at 44.  But Plaintiffs do not explain, however, how that supposed injury could be remedied by ordering EPA to publish a list of test data in the Federal Register.  When EPA includes a list of test data in notices of receipt, it includes only a very high-level description of the document.  *See, e.g.*, 87 Fed. Reg. 15237, 15240 (Mar. 17, 2022) (listing document identified by submitter with description "Particle size distribution analysis").  Even when EPA did not provide certain documents or information to Plaintiffs because a submitter claimed it as confidential, it still provided Plaintiffs with the same high-level descriptions of that material.  Indeed, that is how Plaintiffs were able to describe the alleged health and safety studies that they claim should have been included in the public files.  *See* Am. Compl. at 82 (Table 5).  Again, Plaintiffs simply cannot establish that they have been concretely injured by receiving information in a different format from what they would have preferred.  Defs.' Mem. at 18 (citing *TransUnion*, 141 S. Ct. 2190 at 2214). And Plaintiffs' claim that "EPA overlooks the injury that results" from not providing the lists in the Federal Register notice, Opp'n at 44-45, is vague and speculative.  Plaintiffs nowhere identify any actual, concrete injury to anyone stemming from the alleged incomplete lists of test data.

## CONCLUSION

For the foregoing reasons, the Court should grant EPA's motion and enter judgment on the pleadings in favor of EPA.

Dated: September 9, 2022                    Respectfully submitted,

                                            TODD KIM
                                            Assistant Attorney General

*Of Counsel:*                                *s/ Caitlin McCusker*
DEVI CHANDRASEKARAN                         CAITLIN MCCUSKER
DON SADOWSKY                                    Environmental Defense Section
    Office of the General Counsel              Environment and Natural Resources Div.
    U.S. Environmental Protection              U.S. Department of Justice
    Agency                                     P.O. Box 7611
    1200 Pennsylvania Ave., N.W.               Washington, D.C. 20044
    Washington, D.C. 20460                     (202) 514-1950
                                               (202) 514-8865 (Fax)
                                               caitlin.mccusker@usdoj.gov

                                            *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on September 9, 2022, I filed the foregoing with the Court's CMS/ECF system, which will notify each party.

                                             *s/ Caitlin McCusker*
                                            Caitlin McCusker