IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MICHAEL REGAN, Administrator, U.S. Environmental Protection Agency, in his official capacity, *et al.*, <br> *Defendants*. | Civil Action No. 1:20-cv-00762 (LLA) |

## JOINT STATEMENT REGARDING
## THE SCOPE OF THE RECORD

Pursuant to the Court's August 20, 2024, Order, the parties have met and conferred regarding the scope of the record for judicial review; what portions of the record EPA must produce to Plaintiffs and the Court; and the terms of a protective order. While the parties have resolved many of their disputes, they require the Court to resolve some additional issues which are explained *infra*.

**I.    Scope of Agreed Upon Production**

EPA has agreed to produce the public file for each pre-manufacture notice (PMN) referenced in Tables 5, 6, 7, and 8 of Plaintiffs' First Amended Complaint (ECF 16) at pages 82-93, as well as specific PMNs referenced in Table 2 of Plaintiffs' First Amended Complaint at pages 66-76. EPA has represented that a public file contains all complete, non-confidential versions of the PMN, including attachments. It also contains non-confidential versions of any of the following support documents submitted separately from a PMN via EPA's central data exchange (CDX): communications, suspension letters/requests, withdrawal letters, test data, and amendments. The public file does not contain information that the submitter redacted pursuant to

the submitter's claim the information was confidential business information ("CBI") pursuant to 15 U.S.C. § 2613.

EPA previously made these documents available to Plaintiffs, either in response to Plaintiffs' initial request for the public file or during the course of this litigation. Nevertheless, the parties have agreed that EPA will re-produce the documents with Bates-stamping to allow for ease of reference in briefing. To ease the administrative burden of doing so, EPA intends to produce all contents of PMN public files in its possession as of the date on which the Complaint was filed: March 18, 2020. As a result, the public files submitted to the Court may contain information that was submitted to the agency after the alleged action—i.e., the publication of a Federal Register notice or the production of a public file to Plaintiffs. Plaintiffs have agreed to this proposal, and the parties have agreed to limit their reliance on documents to only those that were in the agency's possession at the time of the alleged action.[1]

Although the parties agree that the Federal Register notices constitute part of the record for judicial review of certain claims, they have agreed that production of Federal Register notices is unnecessary as described in Section II below.

As described below, the parties have a dispute regarding whether material designated by the submitter as confidential under TSCA, 15 U.S.C. § 2613, is properly included in the records for judicial review and whether EPA must produce unredacted versions of PMNs.

---

[1] Plaintiffs reserve the right to move to supplement the record for individual PMNs, by submitting the copy of the PMN that Plaintiffs believe EPA made available to Plaintiffs prior to the filing of this suit. EPA reserves its right to oppose any such motion.

II.     **Agreed Scope of Record**

For several of the counts, the parties have agreed on which documents constitute "an adequate record to permit review." Mem. Op. at 33 (ECF 65) (cleaned up).

- For Counts 1 and 3, the parties agree that the record for judicial review includes publicly available Federal Register notices.

- For Count 4, the Court has determined that no record is required. *See* Mem Op. at 32.

- For Counts 7-8, the parties agree that the record includes the public files for the PMNs listed in Tables 7 and 8 of Plaintiffs' First Amended Complaint. Pls.' First Am. Compl. at pp. 86-93. As to Counts 9 and 10, the parties agree that no record is necessary.[2]

- The parties have also agreed that they can rely on relevant portions of the Joint Stipulations, Motion to Compel Production of the Administrative Record, Exh. A ¶ 1 (ECF 45-1), for purposes of Counts 1-3 and 5-8.

III.    **Partially Disputed Scope of Record**

As to Counts 2, 5, and 6, the parties have partial agreement as to the scope of the record for judicial review. For Counts 5 and 6, EPA has agreed to produce the public file for PMNs, as described in Section I *supra*. For Count 2, EPA will produce the public files for three specific PMNs (P-16-0532, P-18-0077, P-18-0107), which along with the public files EPA has agreed to produce for Counts 5-8, constitute all the PMNs referenced in Table 2 of Plaintiffs' First Amended Complaint. Pls.' First Am. Compl. at pp. 66-76.

However, the parties disagree over whether EPA must produce the full, unredacted PMNs and support documents associated with these claims.

---

[2] Plaintiffs' position on these counts is as follows: Plaintiffs intend to voluntarily seek dismissal of the majority of the claims encompassed in Counts 7-10, pursuant to Fed. R. Civ. P. 41. For Counts 7 and 8, Plaintiffs intend to pursue only some of the individual claims regarding specific PMNs. After they have an opportunity to review the public files, they intend to seek voluntary dismissal of claims regarding PMNs for which the public file does not establish that EPA unlawfully withheld submitter correspondence or PMN amendments. Plaintiffs intend to seek voluntary dismissal of Counts 9 and 10 in their entirety.

**Plaintiffs' position:**

1.  The Court should order EPA to produce the unredacted PMNs in Counts 5 and 6. Plaintiffs' Motion to Compel expressly sought "the full, unredacted [PMN] application that the chemical manufacturer submitted to the Agency." Mot. to Compel at 15 (ECF 45). The Court granted the motion, and the Court's decision clearly contemplated that EPA would produce PMNs—including in unredacted form even if they were subject to confidentiality claims—as it directed the parties to draft and submit a protective order and instructed EPA what to do when it could not locate individual PMNs. Mem. Op. at 33, n.12.

As the Court recognized, "review must be based on the full administrative record that was before the agency at the time it made its decision." Mem. Op. at 7 (cleaned up). The relevant agency decision in both Counts 5 and 6 was which documents to "ma[k]e available . . . for examination" by Plaintiffs, as required by 15 U.S.C. § 2604(d)(1). *See* Mem. Op. at 23-24; Mot. to Compel at 14-16. For each claim in Counts 5 and 6, the documents that were before EPA at the time of the decision include: (1) the documents EPA turned over to Plaintiffs, as evidenced by the public file EPA has agreed to produce; and (2) the full PMNs, in unredacted form, that EPA had at the time it made the decision. *See* Mot. to Compel at 15.

Plaintiffs need the unredacted versions of the PMNs to demonstrate that each contested document is a health and safety study (Count 5) or contains information from a health and safety study (Count 6), and thus that EPA was prohibited from withholding the document from Plaintiffs. *See* Reply at 21-22 (ECF 54) and Mot. to Compel at 16-17 (both describing how Plaintiffs would use these documents to prove their claims under these counts). Thus, both sets of documents are critical to demonstrate that (1) EPA withheld documents and (2) Plaintiffs were legally entitled to those documents.

As to Count 2, if the Court rules in favor of Plaintiffs as to the scope of the record for Count 5, no further production is required. The relevant decision in Count 2 is whether EPA "list[ed]" in the Federal Register all "test data" submitted with the PMNs as required by EPA's regulations. Pls.' First Am. Compl. ¶¶ 151-57 (citing 40 C.F.R. §§ 720.50, 720.70). The documents alleged to be test data in Table 2 are either: (1) available in the public files EPA has agreed to produce; or (2) are the health and safety studies referenced in Table 5 that EPA unlawfully withheld.

Plaintiffs would rely on the contents of such documents to establish that they are test data. And Plaintiffs would rely on the associated Federal Register notice for the PMN to establish that EPA did not "list" the document in the Federal Register notice, as required by 40 C.F.R. § 720.70(a)(3). *See* Mot. to Compel at 13-14 (describing specific example of how Plaintiffs would use the record to litigate Count 2).

2.      EPA takes the position (*infra*) that it should not be required to turn over <u>any</u> PMNs in unredacted form if they contain material designated by the submitter as confidential ("protected material") reprising the very arguments it made in opposing the Motion to Compel.

First, EPA's primary argument—that it "did not look at or consider unredacted versions of documents" (*infra*)—simply rehashes its prior, non-meritorious arguments. EPA previously opposed production of any record materials (including the PMN public files) on the same grounds, arguing that EPA did not "consider any information—directly or indirectly" when EPA made the PMNs available to Plaintiffs." EPA's Mem. in Supp. of Mot. for Jgt. on Pleadings and in Opp'n to Mot. to Compel (ECF 47) at 25 [hereinafter "EPA Opp'n"]. The Court did not accept EPA's argument then and it should not do so now.

Moreover, EPA's position is internally inconsistent. EPA now agrees that the PMN public files are part of the record, despite EPA's position that EPA staff never considered them. If that lack of consideration is not a bar to producing the PMN public files, logically it cannot be a bar to producing the unredacted versions of PMNs that were claimed confidential.

Second, EPA renews its efforts to have the Court prejudge the issues by again arguing: (1) that the Court need not review the redacted record documents in order to resolve the merits; and (2) Plaintiffs would only be entitled to remand even if they were to prevail on the merits. *Compare infra, with* EPA Opp'n at 25, 26, 33-34. As to the first argument, Plaintiffs have explained how the record documents—including unredacted versions—are necessary.

As to the second, Plaintiffs will use the unredacted documents to demonstrate that remand is unnecessary and inappropriate because the record documents, on their face, conclusively establish that they are test data (Count 2), health and safety studies (Count 5), or contain health and safety information (Count 6). As an example, there are multiple "acute oral toxicity" studies in Counts 2 and 5 that EPA withheld as confidential and to which Plaintiffs lack access.[3] But Plaintiffs have access to non-confidential "acute oral toxicity" studies, which: (1) Plaintiffs believe are representative; and (2) on their face are indisputably "test data" and "health and safety studies." One such document is an "Acute Oral Toxicity" study for PMN P-18-0286 that Plaintiffs allege that EPA failed to list in the Federal Register. *See* Pls.' First Am. Compl.at p. 75.[4] The face of the document: (1) states its "purpose" is "[t]o provide information on health hazards" (Plaintiffs' Attachment at P005); and (2) includes data on the doses of the chemical as

---

[3] *E.g.*, First Am. Compl. at pp. 73-75 & 84-85 (entries for P-18-0150, P-18-0274, P-18-0307).

[4] The submitter did not redact the study when submitting the PMN to EPA. The title of the PDF provided by EPA to Plaintiffs is "Acute Oral Toxicity.pdf." A copy is attached as "Plaintiff's Attachment" and has been bates-numbered by Plaintiffs from P001 – P013.

well as numerical "observations" of the number of healthy subjects and necropsies, (*id.* at P007, P011-13). Thus, on its face, the document constitutes both: (1) "test data in the submitter's possession related to the [chemical's] effects on health," 40 C.F.R. § 720.50(a)(1); and a "health and safety study" as it is the "study of any effect of a chemical substance . . . on health . . . including . . . toxicological . . . studies." 15 U.S.C. § 2602(8).

While EPA asserts that the determination of whether such documents constitute "test data" or "health and safety studies" should be remanded (*infra*), Plaintiffs will argue against remand because there is no explanation EPA could provide that would justify any alternative conclusion. These are straightforward determinations the Court can make on its own in the first instance and, at the least, Plaintiffs are entitled to present that argument in full.

Third, EPA's consequentialist arguments (*infra*) are without merit. To begin, Plaintiffs have narrowed their request for material designated as confidential, asking only for the unredacted PMNs needed to prove the allegations in Counts 2, 5, and 6, dealing with health and safety information that TSCA deems non-confidential. These represent 89 of the 200-plus PMNs implicated by this suit.[5] There was no possibility to negotiate any narrower production of protected materials because, even after the Court's Order, EPA took the categorical position that it will not produce any material claimed as confidential.

The Court should not credit EPA's unsupported and belated predictions of "profound" adverse effects from ordering production of PMNs subject to confidentiality claims (*infra*). The Motion to Compel expressly asked for production of even more protected material then Plaintiffs now seek, yet EPA never argued there would be negative consequences from granting the

---

[5] Plaintiffs have voluntarily and unilaterally foregone seeking for production of the unredacted versions of the PMNs in Counts 7-10 containing protected material, having chosen to dismiss those claims in whole or in part. *See supra* n.2.

Motion either in its brief or the accompanying sworn declaration of a senior agency official. *See* EPA Opp'n (absence) and Decl. of Dr. Tala R. Henry (ECF 47-1) (absence).

Regardless, EPA identifies no legal support suggesting that its policy concerns would be relevant to the scope of administrative record production. And the parties have agreed upon the terms of a protective order that is binding on Plaintiffs and their counsel, who will carefully and diligently manage the protected material to prevent disclosure.

3.  Plaintiffs believe EPA should produce the record within 45 days of the Court's ruling. EPA's request for 90 days to produce the record (*infra*) is excessive in light of EPA's stated concerns. The local rules provide 30 days to produce the record, LCvR 7(n), and EPA offers no persuasive justification that additional time is needed to gather or compile the records here, which consist of a closed set of pre-identified documents stored in database locations already known to EPA. While EPA believes it is required to provide 30-days notice to submitters, that cannot justify a further delay of 60 days. Such notice can occur concurrently with compilation of the record because every PMN contains contact information for the submitter company and EPA has had months to prepare.

**EPA's position:**

The Court's memorandum does not make clear whether the Court intends to order EPA to produce material designated by submitters as CBI.[6]  As EPA has explained, it should not.[7] Plaintiffs seek access to many hundreds of documents, submitted by many companies, that contain information designated as confidential.  Such information is not properly included in any record for judicial review, because the agency did not look at or consider unredacted versions of documents when it assembled public files.  EPA Opp'n at 25, 33.  Put differently, the content of such redactions sheds no light on EPA's decisionmaking.  And importantly, the Court does not need to review such material to resolve the relevant questions.  For Count 2, the question for the Court is whether EPA is required to independently determine whether certain information

---

[6] The parties devoted many pages of briefing to the issue of treatment of material designated as CBI, but the Section of the Court's opinion on the Motion to Compel was silent on the issue. Mem. Op. at Section B. Plaintiffs' statement above mischaracterizes the Court's opinion, which did not "direct[ ] the parties to draft and submit a protective order" but instead asked the parties to address terms of any protective order should they seek one. *Compare supra*, *with* Mem. Op. at 33 (directing the parties to address "for each count, the types of documents that the parties believe form the administrative record" and "the terms of any protective order the parties seek" (emphasis added). Plaintiffs similarly misconstrue the Court's suggestion, at footnote 12, concerning how to approach a situation where the agency cannot locate certain documents that Plaintiffs believe are in its possession. Nothing about this suggestion concerns the treatment of material designated as CBI.

[7] With regard to Count 2, Plaintiffs incorrectly state that EPA "agrees that the PMN public files are part of the record." *Supra*. EPA recognizes and will comply with the Court's August 20, 2024 Order, but it nevertheless maintains its position that there is no administrative record or records in connection with the alleged agency actions or inactions. EPA cannot "agree" that any files are part of administrative records that it maintains do not exist. EPA's agreement to allow Plaintiffs to rely on redacted versions of public files for the PMNs listed in Count 2 for purposes of judicial review, where such records are already publicly available and have already been produced to Plaintiffs, was offered as a compromise to narrow the issues requiring court resolution. Such records are more than sufficient to facilitate judicial review of the relevant issues and the production of those cause no harm. The same cannot be said for material designated as CBI, which has never and should not be provided for the reasons discussed herein. In any case, such an offer does not undermine the consistency of EPA's position.

submitted with or in support of a PMN application constitutes test data, thus requiring it to be listed on the notice of receipt in the Federal Register.  As EPA has explained, it did not do this in the first instance.  *See* Henry Decl. at ¶¶ 41-42.  For Counts 5 and 6, the Court must determine whether EPA was required to review the validity of a submitter's CBI designations when assembling a public file.  EPA Opp'n at 32-33.  Again, EPA has clearly stated that it did not do so.  EPA does not dispute that some of the PMNs at issue in Counts 5 and 6 may contain health and safety information that a submitter designated as CBI but that is ineligible for confidential protection under TSCA.  But that does not bear on whether EPA was required to review a submitter's CBI designations when assembling a public file.

More fundamentally, ordering EPA to produce such material now, as part of a record for judicial review, goes beyond the relief Plaintiffs would be entitled to even if they succeeded on the merits.  *Id.* at 33-34.  Under the Administrative Procedure Act, "it is not for the Court to conduct 'a *de novo* inquiry into the matter being reviewed and . . . reach its own conclusions based on such an inquiry.'"  *Lubow v. U.S. Dep't of State*, 730 F. Supp. 2d 73, 77 (D.D.C.) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  Even if the Court accepts Plaintiffs' view on Counts 2, that EPA must determine whether information constitutes "test data" and, on Counts 5 and 6, that EPA must determine the validity of CBI designations when preparing a public file, "the proper course . . . is to remand" to allow EPA to conduct further proceedings.  *Id.*; EPA Opp'n at 33-34.  Instead, Plaintiffs ask the Court to determine whether material constitutes test data and adjudicate the propriety of CBI designations across many hundreds of records.  But even Plaintiffs' theory—that EPA must identify test data when preparing public notices of receipt and scrutinize CBI designations when creating public files—

10

recognizes the agency's role in making those determinations in the first instance. The Court should not displace that role and adjudicate such matters before the agency has done so.

Moreover, compelling EPA to disclose this confidential information as part of the record for judicial review would have profound ramifications. Protection of CBI is vital to EPA's evaluation of the risk posed by a new chemical substance, especially where the submissions concern chemicals not previously manufactured in the United States. New chemistry, novel uses, and new production techniques are more likely to be particularly valuable to both PMN submitters and their competitors. EPA depends upon comprehensive and specific data from companies to allow it to assess hazard and exposure concerns of these chemicals. A sweeping order to produce material designated as confidential—before the Court has considered the merits of Plaintiffs' claims and when such material is not required to adjudicate those merits, and before EPA has reviewed such designations in the first instance (if the Court determines it must)—may adversely affect the quality of data provided to EPA without advancing the litigation.

Finally, before producing material designated as confidential, EPA is required to provide 30 days of notice to each Section 5 submitter. 15 U.S.C. § 2613(d)(7), (g)(2). Additionally, third parties sometimes submit information, designated as CBI, in support of a Section 5 submission.[8] In such cases, EPA must also notify those companies as well. This is a time-consuming and resource-intensive process.

Accordingly, even if the Court determines that the record for judicial review includes underlying material that a submitter designated confidential, EPA asks the Court to exercise its discretion to excuse EPA from production of that material or to delay production of such

---

[8] Such a situation arises, for example, where an importer of a new chemical submits a pre-manufacturing notice and the importer's foreign supplier provides information in support of the submission directly to EPA rather than disclosing such information to the importer.

material until it determines whether the law requires EPA to review such designations when creating public files. *See* Mem. Op. at 33 ("The district court has some leeway in determining the scope of an adequate record to permit review of informal agency action." (quoting *Women Involved in Farm Econ. v. U.S. Dep't of Agric.*, 876 F.2d 994, 998 (D.C. Cir. 1989)). And if the Court nevertheless orders EPA to produce such material at this stage in the proceedings, EPA requests 90 days to complete the notice process and produce such material.

### IV.   Protective Order

The Parties have agreed on the terms of a proposed protective order which is attached.

Date: December 3, 2024                                  Respectfully submitted,

COUNSEL FOR PLAINTIFFS:

                                                    /s/ Tosh Sagar
TOSH SAGAR
Earthjustice
1001 G Street, NW, Ste. 1000
Washington, DC 20009
Tel: 202-667-4500
tsagar@earthjustice.org

LAKENDRA BARAJAS
Earthjustice
48 Wall St., 15th Fl.
New York, NY 10005
Tel: 212-284-8025
lbarajas@earthjustice.org

COUNSEL FOR DEFENDANT:

       */s/ Caitlin McCusker*
      Caitlin McCusker
      Trial Attorney
      U.S. Department of Justice
      U.S. Department of Justice
      Environment & Natural Resources Division
      Environmental Defense Section
      P.O. Box 7611
      Washington, D.C. 20044
      Tel: (202) 514-1950
      caitlin.mccusker@usdoj.gov